**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| LEON E. LEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:14-cv-01084-MLB-KMH |
| | ) | |
| LOANDEPOT.COM, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO STAY

### I.   INTRODUCTION

loanDepot ("loanDepot" or "Defendant") asks that the Court stay this case pursuant to the primary jurisdiction doctrine or in accordance of its inherent authority to manage its docket, as this case presents an issue that is currently pending before the Federal Communications Commission ("FCC") and the FCC has indicated that it will issue a decision in the near future.

Plaintiff brought this action alleging, inter alia, that loanDepot, a nationwide mortgage lender, violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, et seq., by calling his wireless phone number without his express consent using an "automatic telephone dialing system (ATDS) capable equipment." (Doc. 1, Compl. ¶¶ 6-8.) As revealed in documents attached to Plaintiff's Complaint, this case arose out of an inquiry for a loan by a third party who appears to have mistakenly entered Plaintiff's telephone number in a request to obtain loan information. (Doc. 1, Compl. ¶ 25 and Ex. 4.)

If the dialing equipment at issue is not an ATDS, as loanDepot asserts, Plaintiff has no claim that loanDepot violated the TCPA by telephoning him using an ATDS. loanDepot maintains that the dialing equipment is *not* an ATDS under the plain language of the TCPA because it is not equipment which has the capacity to store or produce telephone numbers to be

called, using a random or sequential number generator and to dial such numbers.  47 U.S.C. § 227(a)(1).  However, based on several FCC reports and orders concerning what types of machines qualify as ATDS under the statutory definition, some courts misdetermined that certain machines called "predictive dialers" that do *not* have the current capacity to "store or produce telephone numbers to be called, using a random or sequential number generator" constitute an ATDS.  See, e.g., Griffith v. Consumer Portfolio Serv., Inc., 838 F. Supp. 2d 723, 727 (N.D. Ill. 2011) (finding that based on the FCC's final orders, even assuming the equipment cannot generate and dial random or sequential numbers it is still an "automatic telephone dialing system").

Such determinations and confusion concerning the FCC's decisions have resulted in skyrocketing class action litigation, inter alia.  Thus, there are several petitions for declaratory rulings pending with the FCC, asking the FCC to squarely decide what exactly constitutes an ATDS and whether the TCPA even applies to non-telemarketing activity.  The FCC has issued Public Notices seeking comments on the petitions and several members of Congress have asked that the FCC issue a decision on the merits of one of the petitions, noting that "the FCC's 2003 and 2008 TCPA autodialer [ATDS] decisions have created significant confusion for companies that use predictive dialers to initiate live calls for non-telemarketing purposes . . . ."[1]  The FCC has advised that a "draft order to resolve the Petition is under consideration by the Commission . . . ."[2]  Thus, in light of the pending petitions for declaratory rulings, set forth below, and the

---

[1] Letter from Members of Congress to Mignon Clyburn, Acting Chairwoman, Federal Communications Commission (June 19, 2013), attached to the Declaration of Joshua C. Dickinson ("Dickinson Decl."), which is denominated as "**Exhibit A**," as "**Exhibit A-1**" thereto.

[2] Letter from Kris Anne Monteith, Acting Chief Consumer and Governmental Affairs Bureau, Federal Communications Commission, to Honorable Congressman Hunter, U.S. House of Representative (Sept. 10, 2013), attached to Dickinson Decl. as "**Exhibit A-2**."

OM 278955.1

FCC's pending rulings on these petitions, this case should be stayed under the primary jurisdiction doctrine.

Indeed, several other courts faced with TCPA defendant's motions to stay on primary jurisdiction grounds pending FCC resolution have granted stays.  Hurrle v. Real Time Resolutions, No. 13-5765, 2014 WL 670639 (W.D. Wash. Feb. 20, 2014); Mendoza v. UnitedHealth Grp. Inc., No. 13-1553, 2014 WL 722031, *2 (N.D. Cal. Jan. 6, 2014).  In fact, the District of Kansas recently granted a Motion to Stay on this very basis.  Higgenbotham v. Diversified Consultants, Inc., No. 13-2624, 2014 WL 1930885 (D. Kan. May 14, 2014).

In Higgenbotham, like the case at bar, the plaintiff argued that the defendant called her cellular telephone using an ATDS.  Higgenbotham, 2014 WL 1930885, *1.  The defendant moved to stay the case under the primary jurisdiction doctrine or, alternatively, pursuant to the court's inherent authority, arguing that there are petitions pending before the FCC that would clarify the issues in that case.  Id. *2.  The court recognized that there are petitions pending before the FCC that ask the FCC to determine whether equipment lacking the present capacity for random or sequential number generation constitutes an ATDS, and agreed that the statutory reference to "capacity" is unclear.  Id. **2-3.  The court found that "[t]he seminal question of its reach is a technical one, which falls in the ambit of the FCC's administrative expertise," and "[i]t is proper for the FCC to make this determination in the first instance, such that uniformity and consistency in the application of the TCPA can be accomplished."  Id. *3.  Thus, the court found that "the primary jurisdiction doctrine counsels in favor of a stay," and granted a stay until the FCC issues a decision on the Communication Innovators' petition[3] (the court also required the defendant to file a status statement within fourteen days of that decision and ordered the

---

[3] Communication Innovators' petition is described in detail, supra, and is attached to the Dickinson Decl. at "**Exhibit A-3**."

OM 278955.1

defendant to file a status statement by October 1, 2014 if the FCC has not issued a decision therein by that date).  Id. *2.

## II.     FACTS

Defendant is a mortgage company.  It obtains telephone numbers from individuals seeking mortgage information online, who input their contact information and request to be contacted.  Leads obtained from online applications are then up uploaded to Defendant's telephone system.  (Declaration of Saeed Ghasemzadeh ("Ghasemzadeh Decl."), attached hereto as "**Exhibit B**," ¶ 2.)

Plaintiff brought this action based on the TCPA. (Compl. ¶ 1, Doc. 1.)  Plaintiff alleges, inter alia, that loanDepot contacted him on his wireless phone using "automatic telephone dialing system (ATDS) capable equipment in all cases."  (Id. ¶ 8.)  However, while loanDepot utilizes a "predictive dialer," that predictive dialer does *not* have the capacity to "store or produce telephone numbers to be called, using a random or sequential number generator."  (Ghasemzadeh Decl., ¶¶ 2-3.)  Thus, the dialing system that was used in this case to place the calls to Plaintiff did *not* have the capacity "to store or produce telephone numbers to be called, using a random or sequential number generator."  (Id. ¶ 3.)

## III.    BACKGROUND

Congress enacted the TCPA in response to consumer complaints regarding use of "automated equipment to engage in telemarketing."  See Sen. Rep. No. 102-178, at 1 (1991), reprinted in 1991 U.S.C.C.A.N. 1968, 1969; 137 Cong. Rec. 35302 (1991).  The 1991 legislation targeted abusive robotic use of automated telephone solicitations made possible by automatic dialing machines that could generate and dial random or sequential telephone numbers.  See, e.g., TCPA, Pub. L. No. 102-243, 105 Stat. 2394, 2395; 137 Cong. Rec. 35304 (1991); 137 Cong. Rec. 30818 (1991).

OM 278955.1

Thus, Section 227(b)(1)(A)(iii) of the TCPA makes it unlawful for any person to make any call (other than for emergency purposes with the prior express consent of the called party) to a cellular telephone service "using any automatic telephone dialing system or an artificial or prerecorded voice."  The TCPA defines the term "automatic telephone dialing system" to mean "equipment which has the capacity to (A) store or produce telephone numbers to be called, using a random or sequential number generator; and (B) and to dial such numbers."  47 U.S.C. § 227(a)(1).  Thereafter, the FCC addressed the definition of "automatic telephone dialing system" as follows.

### A.      The FCC's Orders

In 2002, the FCC issued a Notice of Proposed Rulemaking (NPRM), seeking comment on "whether the Commission's rules need to be revised in order to more effectively carry out Congress's directives in the TCPA" and, specifically, "whether to revise or clarify our rules governing unwanted telephone solicitations and the use of automatic telephone dialing systems, prerecorded or artificial voice messages, and telephone facsimile machines."  In Re Rules & Regulations Implementing Tel. Consumer Prot. Act of 1991, 17 F.C.C. Rcd. 17459, 17461 (2002).  Therein, the FCC sought comment on "whether a predictive dialer that dials telephone numbers using a computer database of numbers falls under the TCPA's restrictions on the use of autodialers."  Id. at 17475.  The FCC defined a predictive dialer as follows:

> A predictive dialer is an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call.

Id. at 17503.

In 2003, the FCC issued an order "revis[ing] the current Telephone Consumer Protection Act (TCPA) rules and adopt[ing] new rules to provide consumers with several options for

OM 278955.1

avoiding unwanted telephone solicitations." In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14017 (2003). In that order, the FCC addressed predictive dialers and found that a predictive dialer is "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls." Id. The FCC continued that "[t]he hardware, *when paired with certain software*, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." Id. (emphasis added). In that order, the FCC found (for the first time) that "a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress." Id. at 14093.

The 2003 order created much uncertainty. For example, the FCC did not explain whether all predictive dialers fell within the definition of an ATDS, or whether the predictive dialer would fall within the definition *only* if it has the capacity to generate and dial random or sequential numbers. It also failed to address the issue in the context of non-telemarketing activity.

In 2008, the response to a request for clarification that a predictive dialer meets the definition of an ATDS only when it randomly or sequentially generates telephone numbers, the FCC issued a declaratory ruling affirming that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers. In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 23 F.C.C. Rcd. 559, 566 (2008). However, the FCC did not address whether *all* predictive dialers or only predictive dialers that have the ability to randomly or sequentially generate telephone numbers meet the definition of an ATDS. Thus, the 2008 Order perpetuated the uncertainty caused by the

6

2003 order, which has resulted in petitions for declaratory rulings asking the FCC to decide whether equipment that lacks the current capacity for random or sequential number generation constitutes an ATDS, as set forth below.

### B.    Pending Petitions for FCC Declaratory Rulings

The FCC's apparent inclusion of *all* predictive dialers into the definition of an ATDS has sparked significant litigation, and numerous petitions for declaratory rulings asking the FCC to decide whether equipment that lacks the current capacity for random or sequential number generation constitutes an ATDS.  (See In re Commc'n Innovators' Pet. For Declaratory Ruling, CG Dkt. No. 02-278 (June 7, 2012) ("CI Petition"), attached to Dickinson Decl. as "**Exhibit A-3**"; In re YouMail, Inc.'s Pet. For Expedited Declaratory Ruling, CG Dkt. No. 02-278 (Apr. 19, 2013) ("YouMail Petition."), attached to Dickinson Decl. as "**Exhibit A-4**."; In re TextMe, Inc.'s Pet. for Expedited Declaratory Ruling and Clarification, at 8, CG Dkt. No. 02-278 (Mar. 18, 2014) ("TextMe Petition"), attached to Dickinson Decl. as "**Exhibit A-7**.")

### 1.    Communication Innovator's Petition

In Communication Innovator's ("CI") Petition, CI seeks a declaration "that predictive dialers that . . . do not have the current ability to generate and dial random or sequential numbers, are not 'automatic telephone dialing systems' . . . under the TCPA and the Commission's TCPA rules."  (Dickinson Decl. at Ex. A-3 (CI Pet. at 1 (footnote omitted)).)  As CI's Petition advances, the TCPA does not define "capacity" and, as such, the FCC must "clarify that the definition of an autodialer under the TCPA reflects equipment that has a *present* capacity, such as having the current ability to generate and dial random or sequential numbers without additional modifications to the equipment."  (Id. at 17.)  CI argues that the FCC "should not interpret capacity as encompassing any conceivable hardware or software modifications to a device that would permit it to generate, store, and dial numbers randomly or in sequence."  (Id.)

And, CI's Petition correctly notes that interpreting "capacity" broadly to include "any conceivable hardware or software modification" would potentially bring "mobile phones, smart phones, tablets, e-readers, and personal computers" within the FCC's interpretation of the TCPA's scope, as each can "theoretically be modified . . . to randomly or sequentially generate and dial telephone numbers." (Id.)

Four months after CI filed its Petition, the FCC issued a public notice seeking comment on its petition. (Dickinson Decl. at "**Exhibit A-5**" (FCC Public Notice, Consumer and Governmental Affairs Bureau Seeks Comment on Petition for Declaratory Ruling from Communication Innovators (Oct. 16, 2012).) In its Public Notice, the FCC reiterated that CI "asks the Commission to clarify that predictive dialers that . . . do not have the current ability to generate and dial random or sequential numbers are not 'automatic telephone dialing systems' as defined by the Telephone Consumer Protection Act and the Commission's related rules." (Id.)

To date, the FCC has not issued a decision on CI's Petition. However, by letter dated September 10, 2013, the FCC advised several members of Congress that it may issue a decision on CI's Petition in the near future (the Commission advised "[a] draft order to resolve the [CI] Petition is under consideration by the Commission, and Communication Innovators has met with the staff recently to discuss the matter."). (Dickinson Decl. at Ex. A-2.) Thus, the FCC has committed to issuing a decision on CI's Petition—a Petition that requests a ruling on the very issue that is before this Court.

### 2. YouMail's Petition

YouMail, Inc. filed a Petition for Declaratory Ruling with the FCC on April 19, 2013. Like CI, YouMail's Petition asks that "the Commission affirmatively state that only equipment that has underline capacity to store and produce telephone numbers to be called using a random or sequential number generator—and is currently being used for that purpose—should be

OM 278955.1

considered an ATDS." (Dickinson Decl. at Ex. A-4.) The FCC has issued a Public Notice seeking comments on YouMail's Petition, which it described as, <u>inter alia</u>, seeking clarification that software that does not have the current capacity to store, produce, or dial random or sequential numbers is not an ATDS. (Public Notice, Consumer and Governmental Affairs Bureau Seeks Comment on Petition for Expedited Declaratory Ruling from YouMail, Inc. (June 25, 2013), attached to Dickinson Decl. as "**Exhibit A-6**.") To date, the FCC has not issued a decision.

### 3. TextMe's Petition

TextMe filed a Petition for Declaratory Ruling and Clarification with the FCC on March 18, 2014, asking that the FCC "clarify that the term 'capacity' as used in the statutory definition of an ATDS under § 227(a)(1) of the TCPA encompasses only equipment that, at the time of use, could in fact perform the functions described in the TCPA without human intervention and without first being technologically altered," (TextMe Pet. at i, Dickinson Decl. at Ex. A-7.) On April 7, 2014, the FCC issued a Public Notice seeking comment on TextMe's Petition, which the FCC described as seeking clarification of certain aspects of TCPA, one of them being "to clarify the meaning of the term 'capacity' as used in the TCPA's definition of 'automatic telephone dialing system.'" (FCC Public Notice, Consumer and Governmental Affairs Bureau Seeks Comment on Petition for Expedited Declaratory Ruling Filed by TextMe, Inc., attached to Dickinson Decl. as "**Exhibit A-8**".) The Comment Date for TextMe's Petition was May 7, 2014 and the Reply Comment Date was May 22, 2014. (<u>Id.</u>)

## IV. ARGUMENT

An issue that may be determinative as to Plaintiff's claim that loanDepot violated the TCPA by using an ATDS is currently pending before the FCC for clarification and opinion. As such, this Court, like other courts faced with this issue, should stay this action under the primary

jurisdiction doctrine pending the FCC's determination.  In the alternative, the Court should stay this action pursuant to the Court's inherent authority, as a stay furthers judicial economy and efficiency.

**A.**  **The Court Should Stay This Action Under the Primary Jurisdiction Doctrine**

Issues of primary jurisdiction are before the Court in this case and require a stay.  The Tenth Circuit has held that "[a]n issue of primary jurisdiction arises when a litigant asks a court to resolve an issue which, under a regulatory scheme, has been placed within the special competence of an administrative body." S. Utah Wilderness Alliance v. Bureau of Land Mgmt., 425 F.3d 735, 750 (10th Cir. 2005) (internal quotations omitted).  The doctrine allows federal courts to stay proceedings pending resolution of an issue "'falling within the realm of administrative discretion' to an administrative agency with more specialized experience, expertise, and insight." See Williams Pipe Line Co. v. Empire Gas Corp., 76 F.3d 1491, 1496 (10th Cir. 1996); N. Cnty. Commc'ns Corp. v. Cal. Catalog & Tech., 594 F.3d 1149, 11962 (9th Cir. 2010).  "The doctrine of primary jurisdiction . . . is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." Williams Pipe, 76 F.3d at 1496.  The doctrine represents a determination that "administrative agencies are better equipped than the courts to handle particular questions, and that referral of appropriate questions to an agency ensures desirable uniformity of results." Id.

The Tenth Circuit has reiterated that the courts invoke the doctrine of primary jurisdiction when its twin purposes are served, which are to: "(1) ensure desirable uniformity in determinations of certain administrative questions, and (2) promote resort to agency experience

and expertise where the court is presented with a question outside its conventional experience."[4]
Id.  This case satisfies these factors.

First, the questions of what, exactly, constitutes an ATDS under the TCPA is a question
of law that is presently before this Court and is pending before the FCC.  The FCC's declaratory
ruling(s) on the Petitions pending before it will, at a minimum, aid this Court's resolution of this
matter.  Receiving the FCC's guidance on potentially dispositive issues in this litigation will also
be beneficial to the Court and to the parties, and may aid in uniformity of these determinations.

Second, per the TCPA, 47 U.S.C. § 227(b)(2), Congress has granted the FCC the power
to "prescribe regulations" particular to certain TCPA requirements.  Pursuant to that authority,
the FCC has created a complex regulatory scheme that governs telemarketing.  See, e.g., In re
Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991, 18 FCC Rcd. 14014 ¶¶ 132-
33.  The FCC has continually enacted rules and revisions thereto regarding the permissible scope
of automated telephoning activity.  See 47 C.F.R. § 64.1200 (rulemaking history).  Thus, the
FCC is in the best position to opine in the first instance what constitutes an ATDS under the
TCPA.

Furthermore, courts have determined that the primary jurisdiction doctrine should be
applied where the FCC's actions may affect the outcome of a plaintiff's federal court litigation.
TON Servs., Inc. v. Qwest Corp., 493 F.3d 1225, 1243 (10th Cir. 2007) (holding that where
pending "FCC actions may affect the outcome of a plaintiff's federal court litigation, this court
has previously assumed a stay is appropriate"); see S. Cent. Bell Tel. Co. v. Louisiana Pub. Serv.
Comm'n, 744 F.2d 1107, 1118 (5th Cir. 1984), cert. granted, judgment vacated on other grounds,

---

[4] "To this end, before courts invoke the doctrine and refer matters to administrative agencies, they should
consider whether issues of fact (1) fall outside conventional judicial experiences; (2) require administrative
discretion; or (3) "require uniformity and consistency in the regulation of the business entrusted to a particular
agency."  Twin Valley Tel., Inc. v. Universal Serv. Admin. Co., CIV.A.07-2172-CM, 2007 WL 3010352 (D. Kan.
Oct. 15, 2007).

476 U.S. 1166 (1986) (holding that "through the application of the doctrine of primary jurisdiction, the courts and the FCC should be able to prevent both significant inconsistent applications of FCC rules and serious judicial encroachment upon FCC responsibilities."); Hurrle, 2014 WL 670639, * 1.

Specifically, other courts, including the District of Kansas, have determined that the primary jurisdiction doctrine is applicable in the present circumstance.  In Hurrle, the court stayed the case under the primary jurisdiction doctrine, holding that the FCC's guidance on "the 'capacity' of autodialing systems would further clarify the law that Hurrle [the plaintiff] seeks to enforce in this action."  Hurrle, 2014 WL 670639, * 1.  Likewise, in Mendoza v. UnitedHealth Grp. Inc. and Higgenbotham, the courts found that the prerequisites for application of the primary jurisdiction doctrine were satisfied.

Like the case at bar, in Mendoza the defendant contended that at the time of the alleged calls, "it did not utilize any capacity that its predictive dialer may have had to store or produce telephone numbers to be called using a random or sequential generator, and to dial such numbers."  2014 WL 722031, *2.  The court found that the primary jurisdiction factors were satisfied and allowing the FCC to resolve the issue in order to obtain the benefit of the FCC's guidance is appropriate.  Id. at 2.

Also, in Higgenbotham, in finding that the situation fits the purpose of the primary jurisdiction doctrine, this Court found as follows:

> (1) Plaintiff alleges that one of the two ways that defendant violated the TCPA is by using an ATDS to call her cellular telephone.  (2) Defendant disputes that allegation by arguing that the dialing system it used to call plaintiff does not qualify as an ATDS because it does not have the present capacity to store or produce telephone numbers to be called using a random or sequential number generator.  (3) The TCPA defines an ATDS as 'equipment that has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.'  (4) Neither the TCPA nor previous FCC order address the

OM 278955.1

meaning of 'capacity,' specifically, whether it should be interpreted broadly to mean potential capacity or narrowly to mean present capacity.

> The court agrees with defendant that the statutory reference to 'capacity' is unclear.  The seminal question of its reach is a technical one, which falls in the ambit of the FCC's administrative expertise. . . . It is proper for the FCC to make this determination in the first instance, such that uniformity and consistency in the application of the TCPA can be accomplished.

Higgenbotham, slip op. at 7-8.  The same result should occur in this case.

## B.	The Court Should Stay This Action Pursuant to the Court's Inherent Authority

As a general rule, "the power to stay proceedings 'is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'"  United Steelworkers of Am. v. Or. Steel Mills, Inc., 322 F.3d 122, 1227 (10th Cir. 2003) (quoting Landis v. North Am. Co., 229 U.S. 248, 254 (1936)).  "The court should use this power in its discretion to provide "economy of time and effort for itself, for counsel, and for litigants."  Beltronics USA, Inc. v. Midwest Inventory Distribution LLC, 545 F. Supp. 2d 1188, 1189 (D. Kan. 2008) (quoting Landis, 299 U.S. at 254).  And, in exercising this discretion, the court "must weigh competing interests and maintain an even balance."  Id. (quoting Landis, 299 U.S. at 255).

Here, a stay is warranted and in the interest of efficiency and judicial economy because if the FCC determines that dialers, like loanDepot's, that do not have the current ability to generate and dial random or sequential numbers are not ATDSs under the TCPA, Plaintiff's claim cannot survive.  Absent a stay, loanDepot will be forced to incur the burden and expense of defending claims that may ultimately be impotent as a matter of law.  Given the early stage of this case (loanDepot just filed its Answer on April 11, 2014) and the likelihood of an FCC ruling in the near future (the FCC has specifically advised Members of Congress that a draft order to resolve

OM 278955.1

these issues is under consideration by the FCC), Plaintiff cannot show that he would suffer prejudice by a stay.  And, loanDepot's interest in a stay is obviously strong.

## V.       CONCLUSION

For the foregoing reasons, the Court should stay this case under the primary jurisdiction doctrine or pursuant to its inherent authority until the FCC rules on the pending Petitions.  As in Higgenbotham, the Court should order a stay until such ruling from the FCC, or require Defendant to file with the Court a status report within six months.  While Defendant cannot predict with certainty when the FCC will rule, undersigned counsel, based upon industry consensus, believes a decision will be reached in a matter of months.

Dated this 22nd day of May, 2014.

Respectfully submitted,

SPENCER FANE BRITT & BROWNE LLP

By: s/ Joshua C. Dickinson
Joshua C. Dickinson        KS Bar No. 20632
Bryant T. Lamer            KS Bar No. 22722
1000 Walnut, Suite 1400
Kansas City, MO 64106
Telephone: (816) 474-8100
Facsimile: (816) 474-3216
E-mail: jdickinson@spencerfane.com
            blamer@spencerfane.com

ATTORNEYS FOR DEFENDANT

OM 278955.1

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically with the United States District Court for the District of Kansas this 22nd day of May, 2014, with notice of case activity generated and sent to Pro Se Plaintiff via first class mail, postage prepaid, addressed as follows:

Leon E. Lee
1314 Dunsworth
Wichita, KS 67212

s/ Joshua C. Dickinson
Attorney for Defendant

OM 278955.1