IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**FILED**
U.S. District Court
District of Kansas

APR 2 8 2015

Clerk, U.S. District Court
By _____ Deputy Clerk

LEON E. LEE
*Plaintiff,*

§
§
§
§
§
§
§
§
§
§
§

Case No. 6:14-cv-01084-MLB-KMH

vs

LOANDEPOT.COM, LLC
*Defendant.*

## PLAINTIFF LEON E. LEE'S MOTION TO LIFT STAY

Plaintiff, Leon E. Lee, respectfully requests that the Court Lift the Stay granted in this case on August 20, 2014 so the case may move forward based on the merits.

### A. Introduction and Background

1. Plaintiff is Leon E. Lee and the Defendant is Loandepot.com LLC (Defendant) (loandepot).

2. Plaintiff sued Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*

3. Defendant filed a Motion to Stay this case on May 22, 2014 which was granted by the Court on August 20, 2014. We are fast approaching the one-year anniversary of the stay being granted with no decision or any indication of any impending decision from the FTC occurring regarding the issues raised by the Defendant in its request for stay.

4. Defendant stated in its motion that it disputes that its equipment used to call the Plaintiff falls within the TCPA's definition of an ATDS and there was a petition pending before the Federal Communications Commission (FCC) that related directly to the instant case that could dispose of at least one cause of action in Plaintiff's Complaint.

5.  Mr. Lee is a hard-working American citizen and enjoys spending as much time as possible with friends and family in the privacy of his own home.  Mr. Lee began receiving phone calls from a telephone number he did not expect to receive calls from or recognize.  The calls were placed by the Defendant and came at a time when either Mr. Lee was working or was trying to enjoy time with friends and family and have a conversation in his own home without interruption.

6.  Mr. Lee had to stop his work and crawl out from under a car he was repairing to see who was calling only to receive a recorded telemarketing message left by the Defendant.  After receiving another call with no live person on the line Mr. Lee *finally* got a person on the line on the third call he received from the Defendant and informed them they had the wrong number and to stop calling.  A minute or two later Mr. Lee received yet another call and **again** informed the person that *finally came on the line* for the second time they had the wrong number and to **quit calling his phone**.  Plaintiff then received additional calls back to back less than one minute apart in machine gun fashion with no live person on the phone when he answered which were obviously placed by the Defendant's automatic dialing equipment.  The rapid fire back to back calls from the Defendant rendered Mr. Lee's phone virtually unusable to make even an emergency call out if necessary.  Mr. Lee became very agitated because of the many calls disrupting his time working and his activities with friends and family.

7.  Mr. Lee contends that the Defendant violated the law by calling his wireless phone number with an automatic telephone dialing system (ATDS) for a non-emergency purpose, without having his prior express consent.  Mr. Lee is charged for each minute used on his wireless phone and does not have the luxury to wait for someone to answer the phone.  Every call

received from the Defendant began with a long silence with no live person on the line to talk to. Mr. Lee's wireless phone number was placed on the national do not call list a number of years before receiving the unsolicited telemarketing calls placed by the Defendant.

## B. Argument

7.  Defendant, through its own Declaration of Saeed Ghasemzaden provided as Exhibit B to its motion declares in paragraph 2 (*See* Doc. XXX-2) that the calls placed by Defendant to Plaintiff's wireless phone ***were made with a predictive dialer***.

8.  Predictive dialers fall fully under the definition of "automatic telephone dialing systems" (ATDS) in three specific rulings by the FCC the first coming in 2003. The FCC interpreted the definition of automatic telephone dialing systems to include predictive dialers which do not generate numbers to be dial randomly dialed but instead use a complex formula designed to ***predict when a person will answer the phone***. See *In re rules and regulations implementing the telephone consumer protection act of 1991,* ¶¶131 –34, 18 F.C.C. 14014, 2013 WL21517853 (Fed. Comm'ns Comm'n July3,2003) ("FCC 2003 Order").

9.  In the Defendant's own declaration it states it uses a predictive dialing system that "does not have the capacity to store or produce telephone numbers to be called using a random or sequential number generator… it in fact stores numbers that are uploaded into loandepot's system and then predictively dialed. It only dials numbers that are programmed into it from loandepot's database; it does not randomly dial numbers." Mr. Saeed Ghasemzadeh signed the declaration and declared under penalty of perjury that the foregoing is true and correct to the best of his knowledge. How is it that they can upload numbers that are programmed into it from loandepot's database if it does not have the capacity to store numbers as stated in the declaration? How can it dial numbers that cannot be stored? How could that be remotely

possible?  The Defendant conveniently leaves off the last part of the 2012 order language "**or**

**from a database of numbers**" in making its argument to purposefully mislead the court.

This does not exclude their equipment from the definition of an ATDS as declared in the

FCC 2003 order and the 2008 FCC Order 07-232 7 ¶¶ 22-24.

10. Finally, the Commission found that a predictive dialer falls within the meaning and statutory

definition of "automatic telephone dialing equipment" and the intent of Congress.  Again in

2012 the FCC--- for a third time--- tried to put this issue to rest.  The FCC again reaffirmed

its 2003 order and explained that "the scope of that definition encompasses hardware" [that],

when paired with certain software, has the capacity to store or produce numbers and dial

those numbers at random, in sequential order, **or from a database of numbers.**" (Emphasis

added) *In rules and regulations implementing the telephone consumer protection act of 1991*

*request for Soundbites Communications, Inc. for clarification of declaratory ruling,* CG

Docket No. 02-278, declaratory ruling, 27 FCC red 15391, 15391-15392, para. 2,n. 5(2012)

("FCC 2012 Order.")

11. As a fact, the Defendant initiated all calls using a "predictive dialer" by its own sworn

statement and admission in its Declaration.   With that being an undisputed fact the FCC has

ruled not once-- **but three times**-- that a "predictive dialer" is considered an ATDS under the

TCPA.  The issue raised at this time does not require the FCC's technical or policy expertise

regarding the legality of a "predictive dialer."

12. The argument made by the Defendant for a stay is a red herring; the issue is not how a call is

initiated, but whether the system has the "capacity" to auto dial.  Further, the Defendant is

hoping the FCC will somehow do an about face and change the definition of an ATDS in the

TCPA statute.  The FCC does not have the authority to change federal law.  Only Congress

can change federal law.  While the issues raised by the Defendant certainly fall within the

FCC's jurisdiction, interpretation of "capacity" is not expressly committed to the agency's

discretion. See *Pimental,* 2012 WL 1458179,*4 (finding that although these terms are not

defined in the TCPA, Congress has not placed the task of defining them particularly within

the FCC's discretion.)

13. The Defendant is allegedly waiting for clarification of an issue that has **already been**

    **addressed by the FTC on 3 separate occasions with the same end result** and where the

    likelihood of it doing an about face on the matter is extremely unlikely.  There is only one

    reason for their actions and that is because their current predictive dialer telephone system

    renders them liable under the TCPA. The stay is merely a delaying tactic in the instant case

    instead of allowing it to move forward to adjudication on the merits.

14. It is a crystal-clear fact that the Defendant's predictive dialer is an ATDS under the TCPA.

    The Defendant in its arguments for stay relies on conveniently omitting the wording in the

    declaratory ruling that makes them liable for the TCPA violations in order to deceive the

    court into thinking their telephone system does not store numbers to be called. The issues

    raised in this case do not require the FCC's technical or policy expertise given the

    Defendant's Declaration regarding their phone system and it is one that has been addressed

    by the FCC in the past.  Whether the predictive dialer used by the Defendant is an "automatic

    telephone dialing system" or "autodialer" as these terms are used in the TCPA is a

    straightforward question.   The Defendant categorically states in its Declaration (" it only

    dials numbers that are programmed into it from loan depot's database") which absolutely

    supports the position that their telephone system *does store numbers* in a database and **IS**

indeed an ATDS. The stay is merely an attempt to delay Mr. Lee's pursuit of justice for violation of his rights.

15. The Defendant is attempting to "muddy the waters" regarding the TCPA making the situation much more complex than it actually is.   After considering the foregoing the court must determine if the doctrine of primary jurisdiction is still appropriate in this case.  Courts often use the following four factors test:

   (1) Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agencies particular field of expertise;

   (2) whether the question at issue is particularly within the agency's discretion;

   (3) whether there exists a subtle danger for inconsistent rulings; and

   (4) whether a prior application to the agency has been made.

Ultimately, the doctrine "applies in the limited set of circumstances," *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008), and "it is to be invoked sparingly, as it often results in added expense and delay." *Alpharma, Inc. v. Penfield Oil Company*, 411 F. 3d 934, 938 (8th Cir. 2005).  While the issues raised by the pending petitions certainly fall within the FCC's jurisdiction interpretation of "capacity" they are not expressly committed to the agency's discretion. See *Pimental*,2012 WL 1458179, *4 (finding that although these terms are not defined in the TCPA, Congress did not place the task of defining them particularly within the FCC's discretion).  The primary jurisdiction doctrine is not one "of futility" *Local Union No. 189, Amalgamated  Meat Cutters and Butcher Workmen of N. Am., AFL-CIO V. Jewel Tea Co.*, 381 U.S. 676, 686 (1965). Instead, where an agency has not "expeditiously determine[d]" the issues in question, the litigation should continue. *See Excellilar Inc. v.*

*U.S.W. New Vector Grp.Inc.* No. 96-cv-1514, 1998 WL 19609616, at*1 (W.D. Wash. Feb. 9,

1989). As Judge Der-Yeghiayan recently explained in denying a motion to stay a TCPA

action pending FCC action [j]udicial economy would not be served if this case is allowed to

stagnate on the court docket, waiting indefinitely for decision by the FCC... *See Sterk v.*

*Path,Inc.,* No.13-cv-2330, 2013 WL 5460813, at*2 (N. D. Ill. Sept. 26, 2013).

16. Finally, the Defendant has failed to state how their predictive dialer is not an ATDS when

their declaration declares **"it dials numbers from a database"**, exactly the same wording as

the FCC's declaratory wording **"or dials from a database."**

17. **Numerous courts have rejected similar motions to stay based upon the primary**

**jurisdiction doctrine.** Loandepot argues that the instant case should be stayed because

courts across this country are divided on the issues of TCPA. The Defendant cites numerous

cases in support referencing many of the same pending FCC petitions in support of its motion

to stay the instant case as well as attempting to persuade this court that the FCC's 2003, 2008

and 2012 orders might not be so clear thus requiring further guidance and clarification from

the FCC under the doctrine of preliminary jurisdiction.

18. Mr. Lee acknowledges the cases cited by the Defendant but shows that at least nine (9)

motions have been denied that seek to stay litigation on the same or similar issues.

*See Espejo v. Santander Consumer USA, Inc.* No. 11C 8987 (N.D. ILL. Aug. 28, 2014)

*Knapp-Ellis v. Stellar Recovery, Inc.* No.2; 13-cv-01967-RMS (W.D. Wash. Oct. 7, 2014)

*Murray v. Diversified Consultants, Inc.,* No. 8 13-cv-3074-T-30AEP (M.D. Fla. June 9,

2014)

*Trainor v. Citibank,National Association,* Civ. No.14-62 (PAM/JSM) (D. Minn. June 6,

2014)

*McKenna v. WhisperTEXT*, No.5:14-cv-00424-PSG (N.D. Cal. Sept.29, 2014)

*Fenescy v. Diversified Consultants, Inc.*, Civil Action No.3: 14-CV-347 (M.D. Pa. June 4, 2014)

*Fail v. Diversified Consultants, Inc.*, No. 8: 14-cv-525-T-30EAJ (M.D. Fla. June 9, 2014)

*Shehan v. Wells Fargo Bank N.A.*, F. Supp.3d, 2014 WL 5529365 (N.D. Ala. Nov.3, 2014)

19. In *Meyer v. Receivables Performance Management, LLC*, the Western District of Washington focused on the defendant's *failure to explain* how a prospective FCC ruling reversing prior rulings would be retroactive to the case at bar. The court decided *the rulemaking petition is no basis for staying this case. It is one thing to hope the FCC will issue new rules that favor debt collectors like RPM. It is another to hope that the FCC will impose those rules retroactively, such that they would eliminate whatever liability RPM faces for its past practices...RPM seems to prefer to rely on FCC rulings that may never come rather than its own effort to demonstrate that it does not use an auto dialer. The court does not share that preference. "* Accordingly, the primary jurisdiction doctrine fails to support a stay in this particular case and the stay should be lifted.

## Communication Innovators Petition

20. The Communication Innovators petition asked the FCC to specify that non-telemarketing uses of systems with the capacity to predictive dial are not categorically prohibited by the TCPA. In September 2013 the FCC stated, "We take seriously the issue raised in the petition and the potential impact on consumers, and expect the commission to resolve it soon" (Doc. 11 at p 5). Over the course of the following 10 months, however, the FCC did **not** make a ruling and Communication Innovators ultimately decided to ***withdraw its petition.*** *See* CG Docket No. 02-278 (July 14, 2014).

21. The Plaintiff takes note that despite the court order for stay granted on August 20, 2014 wherein on page 4 of the Order the Court stated "defendant is hereby directed to notify this court of a ruling by the FCC on any of the three petitions discussed above within **fourteen days** of the ruling and to provide the court with a copy of the ruling (s).  If no such order has been entered by the FCC by **November 1, 2014** defendant shall submit a status report to the undersigned US magistrate Judge by email to *ksd_humphreys_chambers@uscoutrs.gov* at which time in the court may, on its own motion, continue to stay accordingly." Although the Plaintiff was not informed of the withdrawal of the above petition, the Defendant evidently failed to inform the magistrate judge of the withdrawal of the petition approximately 40 days prior to the date the first order for stay was granted. [See Exhibit 1]  Apparently the court failed to notice that the petition has been withdrawn and referenced it in its decision to grant the stay based in part on that petition as noted in the footnotes of the order.

22. Plaintiff would further note that Communication Innovator's petition was for a Declaratory ruling regarding **non-telemarketing use** of predictive dialers, where the instant case IS about telemarking as **admitted by the defendant in their answer to the complaint**. Plaintiff can only speculate as to what the motives of the Defendant may have been for failing to notify the court of the withdrawal of the petition when it was obligated to do so, even if it found out about the withdrawal at a later date.  Thus loandepot brings the Communication Innovator's petition before the court without merit.

## YouMail, Inc. Petition

23. The Youmail, Inc. petition deals with specific technological and communication practices. Their petition revolves around invitations and notification services provided by an application (APP) that offers smartphone users a software based menu for advanced voicemail features, and over the Internet.  Mr. Lee agrees that the particular issues are a matter of first impression and in need of FCC clarification in an opinion on the specific matter.  While the petition asked for clarification for the meaning of "capacity", it is referred to in the context of invitations and notification services provided by the application and over the Internet (they are specific communications systems).  In the instant case loandepot does not state how the petitions relate to their predictive dialer telephone system, used in their telemarketing.

## TextMe, Inc. Petition

24. The TextMe, Inc. petition requests that the FCC clarify the meaning of the term "capacity" as used in the TCPA in the context of text messages and to clarify that third-party consent obtained through an intermediary satisfies the TCPA's "prior express consent" requirement for calls… to wireless numbers.  The instant case has nothing to do with text messages but instead phone calls to Mr. Lee's wireless phone for telemarketing purposes and admitted by the Defendant.  Secondly, loandepot has not provided any documentation showing Mr. Lee gave his "prior express consent" to be called by them.

25. A declaratory ruling by the FCC on text messages and prior express consent even if it does occur would have absolutely no bearing on this telemarketing related cause of action.

26. The TextMe, Inc. petition being cited as a reason for staying the instant case is a red herring issue in that the issues to be decided by the FCC are completely unrelated to the issues before

this court.  The stay should be lifted so Mr. Lee can proceed to adjudication of this case on

the merits in a reasonable timeframe rather than having the case endlessly delayed based on

matters completely unrelated to the issues at hand.

<u>**loandepot Refers to Their Own Dialing System as an Autodialer**</u>

27. loandepot in its motion for stay stated their predictive dialer is not an autodialer yet publicly

advertises for technicians to service and maintain loandepot's **autodialer.** [See Exhibit 2]  If

loandepot's predictive dialer was not an autodialer why would it be necessary for loandepot

to advertise for an employee to maintain an autodialer "contact center technician to handle;

configure and maintain the auto dialer to ensure maximum dialing and minimum abandoned

calls"?  loandepot **OBVIOUSLY** refers to their own system as an autodialer!  If loandepot's

dialing system was not an autodialer why would it be necessary for loandepot to include the

following statement on their website "by submitting this form, I am providing express

consent to receive autodialed and or prerecorded calls from loan depot at the telephone

number entered above, even if it is a cellular telephone number or other service for which the

called person(s) could be charged for such call"?  [See Exhibit 3] loandepot's own referral to

their system as an "**autodialer**" on their own website shows the argument that their phone

system is **not an autodialer** made to this court to support their motion for stay has absolutely

no merit whatsoever and the stay should be lifted.

<u>**The Defendant Omits the FCC's Declaratory<br>Ruling of the Statutory Definition of an ATDS**</u>

28. The Defendant argues that some courts have "misdetermined" that certain machines called

predictive dialers that do not have the capacity to store or produce telephone numbers to be

called using a random or sequential number generator constitute an ATDS. *See e.g.,* Griffin

v. Consumer Portfolio Services. Inc. 838 F. Supp. 2d 723, 727 (N. D. Ill. 2011) (finding that

based on the FCC's final orders, <u>even assuming the equipment cannot generate and dial</u> <u>random or sequential numbers it is still an automatic telephone dialing system</u>). (Emphasis Added) With continued confusion on such matters the FCC made yet a further ruling to clarify what constitutes an automatic telephone dialing system and explained in a 2012 ruling "the scope of that definition encompasses "hardware [that], when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, **or from a database of numbers".** *Rules and regulations implementing the telephone consumer protection act of 1991, request for soundbite communications, Inc. for clarification and declaratory ruling,* CG Docket No. 02-278, Declaratory Ruling, 27 FCC Rcd 15391, 15391-15392 , para. 2, n. 5 (2012).

29. The Defendant's omission of the above clarification and declaratory ruling in its arguments for stay and the undisputed fact that loandepot dials numbers from a database of numbers indicates they do, in fact, use an autodialer to place calls in their operations just as they did to Mr. Lee. [See Declaration of Saeed Ghasemzaden attached as Exhibit 4] Because loandepot's predictive dialer dials from a database of numbers qualifies it as an ATDS under the TCPA. Their contention that it is not an ATDS and any future ruling by the FCC would somehow reverse three prior rulings of the FCC on this matter and make the decision retroactive that loandepot's actions were not a violation of the TCPA are without merit and almost ludicrous.

<u>**SUMMARY AND CONCLUSION**</u>

Mr. Lee filed a complaint against loan depot for violations of the telephone consumer protection act (" TCPA"), 47 U.S.C.§ 227. Mr. Lee contends that loandepot violated the TCPA by calling his wireless phone number with an automatic telephone dialing system

("ATDS") for a non-emergency purpose without having his prior express consent to do so. Mr. Lee's wireless phone number was on the national do not call list years before the alleged violations by the Defendant as stated in his complaint.

The court has stayed the case under the "doctrine of primary jurisdiction."  loandepot moved this court to stay the matter until the FCC issued decisions on specific petitions that seek, respectively, ---" clarification".  It is one thing to hope the FCC will issue new rules that favor corporations like loandepot.  It is another hope that the FCC will impose those rules retroactively  such that they would eliminate whatever liability loandepot faces for its past practices. *See Aderhold v. Car2go N.A.* No. 13-489 RAJ, 2014 U.S. Dist. LEXIS 26320, at*21-23 & N, 4 (W. D. Wash. Feb 27, 2014). *As stay is not in any party's interest.*  Any reconsideration by the FCC regarding its interpretation of these provisions would likely apply prospectively. *See Swope v. Credit Management, LP,* 2013 WL 607830, (E. D. Mo. Feb.19, 2013); *Meyer v. Performance Management, LLC,* 2014 WL 197664, at  *1-*2 (W. D. Wash. may 14, 2014) ("there is no reason to believe that the FCC rules will have any impact on this case").

There is no question as to what type of telephone system loandepot uses to make outbound telemarketing calls.  There is no question that it dials numbers from loandepot's database using a predictive dialer.  There is no question that a predictive dialer that dials from a database of numbers is an ATDS "or dials numbers from a database". *See* CG Docket No. 02-278, declaratory ruling, 27 FCC rcd 15391, 15391-15392, para. 2,n. 5(2012) ("FCC 2012 Order.")  There is no question that the FCC's declaratory rulings are binding on the court.  Interestingly enough --- nothing has stopped loandepot from filing a motion to dismiss

or motion for summary judgment seeking rulings that it does not use an autodialer within the meaning of the TCPA.

Loandepot instead seems to prefer to omit Declaratory Rulings and wording out of the statutes that would hold them strictly liable, and rely on FCC rulings that may never come and would be wholly unrelated to the issues in the instant case rather than its own effort to demonstrate it does not use an autodialer. Leaving loandepot's stay in place in the instant case would likely lead to even more fruitless delays, with all likelihood it setting an example for unnecessarily staying other TCPA cases (creating a domino effect).

Mr. Lee does not wish to grow old with loandepot as he assumes the court does not wish to grow old with Mr. Lee and loandepot on its docket. Mr. Lee filed the case on March 19, 2014 and loanDepot argued to the court that the FCC's decisions on three (3) rulemaking petitions were not far away. Almost a year later still no declaratory rulings have come from the FCC on the two (2) remaining petitions before it. Any further delays in this case would be a miscarriage of justice and prejudicial to Mr. Lee.

WHEREFORE, Mr. Lee respectfully requests this Honorable Court enter an Order lifting the stay in the above styled case so the case may proceed on the merits without further delay.

Dated: April 28, 2014

Respectfully Submitted,

Leon E. Lee
1314 Dunsworth
Wichita, Kansas 67212
316-680-2833

## CERTIFICATE OF SERVICE

I certify that an original copy of the MOTION TO LIFT STAY was mailed to the below named party on the date stated below.

Done this 28 day of April , 2015

Joshua C. Dickinson by USPS certified mail # 7014 0510 0000 0680 3999

12925 W. Dodge Rd. Suite 107
Omaha, NE 68154

Leon Lee

# Hogan
# Lovells

Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
T +1 202 637 5600
F +1 202 637 5910

July 14, 2014

**VIA ELECTRONIC DELIVERY**

Marlene H. Dortch, Secretary
Federal Communications Commission
445 12th Street, SW
Room TWA325
Washington, DC  20554

**Re:     *Withdrawal of Petition*
          CG Docket No. 02-278**

Dear Ms. Dortch:

On June 7, 2012, Communication Innovators ("CI") filed a Petition for Declaratory Ruling
("Petition") regarding the non-telemarketing use of predictive dialing solutions under the Telephone
Consumer Protection Act ("TCPA").[1]  Since that time, numerous other parties have sought
clarification of issues involving the application of the TCPA to predictive dialers and other innovative
technologies, as well as the definition of "automatic telephone dialing system."  Because the legal
issues raised by the CI Petition would be encompassed by Commission action on those petitions
(which have a more recent record), including on the clarification requested in the Petition for
Rulemaking of ACA International,[2] CI hereby respectfully withdraws its Petition.

Pursuant to Section 1.1206(b) of the Commission's rules, I am filing this notice electronically
in the above-referenced docket.  Please contact me directly with any questions.

Respectfully submitted,

*/s/ Mark W. Brennan*

Mark W. Brennan
Counsel to Communication Innovators
mark.brennan@hoganlovells.com
D 1+ 202 637 6409

---

[1] Communication Innovators, *Petition for Declaratory Ruling*, CG Docket No. 02-278 (filed June 7, 2012).

[2] ACA International, *Petition for Rulemaking of ACA International*, CG Docket No. 02-278 (filed Jan.31,
2014); *see also, e.g.,* Professional Association for Customer Engagement, *Petition for Expedited
Declaratory Ruling and/or Expedited Rulemaking of the Professional Association for Customer
Engagement*, CG Docket No. 02-278 (filed Oct. 18, 2013); Glide Talk, Ltd., *Petition for Expedited
Declaratory Ruling of Glide Talk, Ltd.*, CG Docket No. 02-278 (filed Oct. 31, 2013); TextMe, Inc. *Petition
for Expedited Declaratory Ruling and Clarification of TextMe, Inc.,* CG Docket No. 02-278 (filed Mar. 18,
2014).

Hogan Lovells US LLP is a limited liability partnership registered in the District of Columbia. "Hogan Lovells" is an international legal practice that includes Hogan Lovells US
LLP and Hogan Lovells International LLP, with offices in: Alicante  Amsterdam  Baltimore  Beijing  Brussels  Caracas  Colorado Springs  Denver  Dubai  Dusseldorf
Frankfurt  Hamburg  Hanoi  Ho Chi Minh City  Hong Kong  Houston  Johannesburg  London  Los Angeles  Luxembourg  Madrid  Miami  Milan  Moscow  Munich  New
York  Northern Virginia  Paris  Philadelphia  Prague  Rio de Janeiro  Rome  San Francisco  Shanghai  Silicon Valley  Singapore  Tokyo  Ulaanbaatar  Warsaw
Washington DC  Associated offices: Budapest  Jakarta  Jeddah  Riyadh  Zagreb  For more information see www.hoganlovells.com



# EXHIBIT 1

Contact Center Technician- VoIP (CA) at *loanDepot* in ...

*www.linkedin.com/jobs2/view/10356393*
LinkedIn
Jan 10, 2014 - *loanDepot* - Foothill Ranch, CA ... handle; Configure and maintain the *auto dialer* to ensure maximum dialing with minimum abandoned calls.

Posted January 9th 2014 on this web sight

http: inquester.jobamatic com a jobs find-jobs q-loandepot

Contact Center Technician  VoIP          **Loandepot**          **Foothill Ranch, CA**

Jan 09  Responsible for the day to day operation, support, and configuration of the corporate VoIP telephony systems and their related subsystem. Planning, design, and implementation of... more



**EXHIBIT 2**

# Refinance

# Buy a Home

First name

Last name

Phone

Zip code

E-mail

Loan Amount

Estimated Value

By submitting this form, I am providing express consent to receive autodialed and/or prerecorded calls from loanDepot at the telephone number entered above, even if it is a cellular phone number or other service for which the called person(s) could be charged for such call.

Get Started ❯

EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LEON E. LEE,                              )
                                          )
                Plaintiff,                )
                                          )
        v.                                )        Case No. 6:14-cv-01084-MLB-KMH
                                          )
LOANDEPOT.COM, LLC,                       )
                                          )
                Defendant.                )

### DECLARATION OF SAEED GHASEMZADEH IN SUPPORT OF
### MOTION TO STAY

I, Saeed Ghasemzadeh, pursuant to 28 U.S.C. § 1746, being of full age, hereby declare as follows:

1.      I am the Director of the Contact Center Operations for Defendant loanDepot.com, LLC ("loanDepot"). As such, I am fully familiar with the records and history of this matter and fully authorized to make this Declaration. I make this Declaration in support of loanDepot's Motion to Stay.

2.      The telephone system used by loanDepot to call the number allegedly owned by the Plaintiff is a "predictive dialer," in that the dialing system is premised off leads obtained from online applications and then those leads are uploaded into loanDepot's system and then predictively dialed. It only dials numbers that are programmed into it from loanDepot's database; it does not randomly dial numbers.

3.      I have confirmed with loanDepot's telephone system vendor (Interactive Intelligence, Inc. ("Interactive") that the dialing system that loanDepot utilizes, which was delivered to loanDepot by Interactive, and that was utilized to place the calls at issue in this case,



EXHIBIT 4

does not have the capacity to store or produce telephone numbers to be called using a random or sequential number generator.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Saeed Ghasemzadeh

2

OM 278932 1

**EXHIBIT 4**

**PAGE 2**