**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| LEON E. LEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:14-cv-01084-MLB-KMH |
| | ) | |
| LOANDEPOT.COM, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPPOSITION TO MOTION TO LIFT STAY**

Defendant loanDepot.com, LLC ("loanDepot" or "Defendant") files this Opposition to Plaintiff's Motion to Lift Stay. (Doc. 17.) Plaintiff asks the Court to lift the stay (Doc. 14) because there is no indication of any impending decision from the Federal Communications Commission ("FCC") and, he argues, there are no petitions pending before the FCC that address the issue before the Court. (Doc. 17 at 1.) To the contrary, there are petitions pending before the FCC that address the issue(s) before this Court and the FCC has issued a decision within the last year as to another section of the Telephone Consumer Protection Act ("TCPA"). As set forth fully below, and in loanDepot's previous filings (Doc. 9, 13), loanDepot respectfully requests that the Court deny Plaintiff's Motion.

**I.     BACKGROUND**

As expounded in loanDepot's Memorandum in Support of Motion to Stay (Doc. 9), loanDepot is a mortgage company. loanDepot telephones individuals who have (via an online inquiry) requested mortgage information and to be contacted about a loan or refinancing. (Doc. 9 at 4.) This case arose out of an inquiry for a loan by a third party who appears to have mistakenly entered Plaintiff's telephone number into an online request to obtain loan

OM 344896.1

information.  (Doc. 13 at 1-2.)  loanDepot did *not* contact Plaintiff using a random or sequential number generator.  (See Doc. 9-2.)

Plaintiff alleges that loanDepot violated 47 U.S.C. § 227(b)(1)(A)(iii), inter alia, by calling his telephone number without his express consent using an "automatic telephone dialing system."  (Doc. 2 ¶¶ 6-8.)  An "automated telephone dialing system" ("ATDS") is defined in the TCPA as follows:

> [E]quipment which has the capacity—
> (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
> (B) to dial such numbers.

47 U.S.C. § 227(a)(1).  Thus, in order to constitute an ATDS, the equipment must: (1) store or produce telephone numbers; (2) use a random or sequential number generator; ***and*** (3) dial such numbers.  Further, courts have defined "capacity" under this Section to mean "the system's present, not potential capacity to store, produce or call randomly or sequentially generated telephone numbers."  Marks, 2014 WL 5422976, *3 (quoting Gragg v. Orange Cab Co., 995 F.Supp.2d 1189, 1193 (W.D. Wash. 2014).)

loanDepot has submitted evidence that the telephone equipment that it used to place the calls to Plaintiff does not *randomly* or *sequentially* dial numbers, but rather that loanDepot only telephones persons who have filled out an application for a mortgage.  (Doc. 17.)  Plaintiff does not dispute that loanDepot's telephone equipment does *not* call numbers "using a random or sequential number generator," but asks this Court to determine that loanDepot utilized an ATDS based on several FCC decisions—decisions where the FCC has *impermissibly* modified the clear and unambiguous language contained in 47 U.S.C. § 227(a)(1).  In the FCC's recent decisions, it has determined that certain machines called "predictive dialers" that do *not* have the current capacity to "store or produce telephone numbers to be called, using a random or sequential

number generator" constitute an ATDS.[1]  See, e.g., Griffith v. Consumer Portfolio Serv., Inc., 838 F. Supp. 2d 723, 727 (N.D. Ill. 2011) (finding that based on the FCC's final orders, even assuming the equipment cannot generate and dial random or sequential numbers it is still an "automatic telephone dialing system").  The issue of whether all predictive dialers are categorically an ATDS is pending before the FCC on several petitions.  (See Doc. 13 at 3-4.)  Furthermore, within the last year, the FCC has issued an Order pertaining to another section of the TCPA, thereby dispelling the suggestion that the FCC sits idle.  (Doc. 17 ¶ 19.)

## II. ARGUMENT

First, Plaintiff argues that the stay should be lifted because the petitions pending before the FCC do not concern the issue before this Court.  To the contrary, YouMail and TextMe, Inc.'s Petitions ask the FCC to affirmatively state that *only* equipment that has the current capacity to store and produce numbers to be called using a random or sequential number generator (and loanDepot's equipment does *not*) is considered an ATDS.  (Doc. 13 at 3-4.)  Although Communication Innovators withdrew its Petition, it did so because "the legal issues raised by the CI Petition would be encompassed by Commission action on those [other] petitions (which have a more recent record), including on the clarification requested in the Petition for Rulemaking of ACA International . . . ."[2]  (Doc. 17 at p.16.)

---

[1] "[The Commission finds that a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress." In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14093 (2003). The FCC intimates that a "predictive dialer" is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14091 (2003).

[2] Plaintiff suggests that loanDepot violated this Court's Order (Doc. 14) by not informing the Court that Communication Innovator withdrew its Petition (Doc. 17 ¶ 21), however, the Court's Order directed the parties to inform the Court of an FCC *ruling*. (Doc. 14 at 4.)  Communication Innovator's letter withdrawing its Petition is not an FCC ruling.

Indeed, ACA International, via a Petition for Rulemaking filed with the FCC, has asked the FCC to clarify that not every predictive dialer constitutes an ATDS.[3]  On April 10, 2015, ACA International filed a Notice of Exparte to highlight developments related to the TCPA.[4]  Therein, ACA International requested quick action by the FCC to address the proliferation of TCPA claims, which a former FCC Commissioner has labeled, "Total Cash for Plaintiff's Attorneys" law.  (Ex. 2.)

Undisputedly, the plain language of the TCPA does *not* include predicative dialers within the definition of an ATDS, and any finding that a predicative dialer constitutes an ATDS is derived only from the FCC's erroneous *interpretation* of the statutory definition of an ATDS. See Marks v. Crunch San Diego, LLC, No. 14-348, -- F.Supp. 3d --, 2014 WL5422976, *2 (S.D. Cal. Oct. 23, 2014).  Here, Plaintiff does not seriously dispute that loanDepot does not randomly or sequentially generate numbers to be called, but rather asserts that loanDepot's equipment constitutes an ATDS because loanDepot dials numbers from a database.  (Doc. 17 ¶ 16.)  This strained reading of the TCPA is based on the FCC's impermissible expansion of the definition of an ATDS[5], and Plaintiff's reading may be countermanded by the FCC's determination on the petitions pending before it.  In fact, this year, the court in Gensel v. Performant Technologies, Inc., No. 13-1196, 2015 WL 402840, *2 (E.D. Wis. Jan. 28, 2015), acknowledged that ACA International's Petition would clarify whether a system that does not have the capacity to randomly or sequentially dial numbers constitutes an ATDS under the TCPA, and the court

---

[3] A true and correct copy of ACA International's Petition for Rulemaking, CG Docket No. 02-278 (filed Jan. 31, 2014), available at http://apps.fcc.gov/ecfs/document/view?id=7521072808, is attached hereto as "**Exhibit 1**."

[4] A true and correct copy of the April 10, 2015 letter, available at http://apps.fcc.gov/ecfs/comment/-view?id=60001028678, is attached hereto as "**Exhibit 2**."

[5] Interestingly, Plaintiff agrees that "[t]he FCC does not have the authority to change federal law." (Doc. 17 ¶ 12.)

granted a stay of the proceedings under the primary jurisdiction doctrine. See id. Thus, Plaintiff's insinuation that there are no petitions pending before the FCC that pertain to the issue(s) before this Court is not accurate.

Second, Plaintiff argues that the stay should be lifted because even if the FCC issues a decision favorable to loanDepot, such a decision will not apply retroactively. (Doc. 17 at p.13.) This argument miscomprehends the issue. The Petitioners do not ask that the FCC modify the statutory definition of an ATDS or that the FCC issue any "new rules" as to the definition of an ATDS and, thus, a retroactivity analysis is not relevant. See Hem v. Maurer, 458 F.3d 1185, 1190 (10th Cir. 2006) (holding that "[d]ue process "protects the interests in fair notice and repose that may be compromised by retroactive legislation."). Rather, the Petitions ask the FCC to clarify its *interpretation* of the definition of an ATDS—an interpretation that loanDepot asserts is contrary to the plain language of 47 U.S.C. § 227(a)(1). Thus, Plaintiff's retroactivity argument is simply inapplicable.

Finally, loanDepot notes that within the last year the FCC has issued a detailed order interpreting another section of the TCPA. Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 29 F.C.C. Rcd. 13998 (2014). Thus, Plaintiff's insinuation that a decision by the FCC is dubious is not accurate.

### III.  CONCLUSION

WHEREFORE, for these reasons, as well as those set forth in loanDepot's prior briefing (Docs. 9, 13), loanDepot respectfully requests that the Court stay this case under the primary jurisdiction doctrine or pursuant to its inherent authority until the Federal Communications Commission rules on the Petitions of YouMail,Inc., TextMe, Inc. or ACA International, or stay this case for six months and require loanDepot to file a status report at that time.

Dated this 12th day of May, 2015.

        Respectfully submitted,

        SPENCER FANE BRITT & BROWNE LLP

By: s/ Joshua C. Dickinson
    Joshua C. Dickinson    KS Bar No. 20632
    Bryant T. Lamer    KS Bar No. 22722
    1000 Walnut, Suite 1400
    Kansas City, MO 64106
    Telephone: (816) 474-8100
    Facsimile: (816) 474-3216
    E-mail: jdickinson@spencerfane.com
           blamer@spencerfane.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically with the United States District Court for the District of Kansas this 12th day of May, 2015, with notice of case activity generated and sent to Pro Se Plaintiff via first class mail, postage prepaid, addressed as follows:

Leon E. Lee
1314 Dunsworth
Wichita, KS 67212

        s/ Joshua C. Dickinson
        Attorney for Defendant