IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

FILED
U.S. District Court
District of Kansas

MAY 26 2015

Clerk, U.S. District Court
By_____ Deputy Clerk

LEON E. LEE
  *Plaintiff,*

vs

LOANDEPOT.COM, LLC
  *Defendant.*

Case No. 6:14-cv-01084-MLB-KMH

### PLAINTIFF LEON E. LEE'S AMENDED REPLY TO DEFENDANT LOANDEPOT.COM, LLC'S OPPOSITION TO MOTION TO LIFT STAY

COMES NOW Plaintiff Leon E. Lee with his reply to Defendant loanDepot.com, Inc.'s Opposition to Plaintiff's Motion to Lift Stay and states as follows:

Defendant has asked the court to continue the stay of proceedings pending a ruling by the FCC (Doc. 18) for an additional six months awaiting decisions on petitions pending before the FCC regarding the "Telephone Consumer Protection Act" ("TCPA"). It has already been 9 months since the stay was granted and it was granted with the Defendant stating "the FCC has indicated it will issue a decision in the near future." (Doc. 9 Pg 1). Almost one year later here we are with no decision by the FCC which is hardly in the *near* future. A number of other courts are now either denying motions to stay in TCPA actions with the same issues before the court in this action or are lifting stays that had been granted because of the obvious inaction by the FCC on the pending petitions and given the lack of any evidence that the FCC is going to be taking any action.

In fact one judge even wrote the FCC inquiring as to whether it expected to be making any ruling on the petitions regarding (1) whether dialing equipment that lacks the

Amended Reply to Opposition to Motion to Lift Stay

current capacity for random or sequential dialing constitutes an "automatic telephone dialing system" ("ATDS") as defined by the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA"); (2) whether TCPA liability arises when a cell phone number is reassigned from someone who consented to calls to someone who did not without notice to the caller; and (3) whether the TCPA applies to debt collection calls.[1] On September 4, 2014, I issued an order postponing the decision on Nationstar's motion and staying the case until October 15, 2014. Dkt. No. 48. I did so to allow time for the FCC to respond to Judge Alsup's request for a status update on the pending petitions, which he issued in another TCPA case, *Heinrichs v. Wells Fargo Bank N.A.,* No. 13-05434-WHA (N.D. Cal. Nov. 22, 2013). **The FCC did respond, but gave no indication that it would resolve the matters raised by the petitions in the near term, if ever**. See *Heinrichs,* No. 13-05434-WHA, Dkt. No. 58. (Emphasis Added)

Having considered the FCC's response to Judge Alsup and the relevant filings by the parties in this case, like Judge Alsup I LIFT THE STAY. Application of the primary jurisdiction doctrine is not warranted here. Courts in this circuit have ruled on the meanings of the three terms at issue here consistently and without the need to defer to the technical expertise of the FCC. As reflected in the FCC's response to Judge Alsup, the evidence that the FCC will rule "imminently" on the pending petitions is equivocal at best. It is not clear that rulings on the petitions would be determinative to this case because the questions presented in the petitions appear different from the issues presented here. The obligation of the court to provide a just, speedy and inexpensive determination

---

[1] Judge Alsup in *Heinrichs v. Wells Fargo Bank N.A.,* No. 13-05434-WHA (N.D. Cal. Nov. 22, 2013).

of this case further weighs against the possible benefits of awaiting an FCC decision on the petitions. See Fed. R. Civ. P. 1. Nationstar's motion for stay is DENIED.[2]

Adding to that are comments from FCC Commissioner O'Rielly who stated in a very recent presentation to the National Association of Advertisers on April 1, 2015 that **"While not on this year's agenda**, I did want to draw your attention to an important issue that is impacting all sectors of the economy: litigation under the Telephone Consumer Protection Act (or TCPA)[3]. (Emphasis Added) The Court should also take notice that no TCPA Petitions including those cited by the Defendant in support of continuing the stay including the ACA Petition are on the FCC's Circulation List.[4]

The Defendant would have the court once again believe that a decision is near that would somehow be in their favor when there is NO indication that is the situation and there is every indication that a decision is NOT likely in the near future, if ever, as shown by the very recent public comments from an FCC commissioner above and communications directly to Judge Alsup by the FCC. Defendant's attempt to extend the stay in this case is just further "kick the can down the road to avoid liability" tactics.

The FCC has **already ruled** that predictive dialers are automatic telephone dialing systems (ATDS).[5] The FCC found that the basic function of an ATDS is "the capacity to dial numbers without human intervention" *Id.* Furthermore, the Defendant has stated in its Declaration in support of its motion for stay that it DID use a predictive dialer to place all of the calls to the Plaintiff.

---

[2] Jordan v. Nationstar Mortgage LLC, 14-cv-00787 (N.D. Cal. Oct. 20, 2014)
[3] http://www.fcc.gov/docuemnt/commissioner-oriellys-remarks-ana
[4] https://www.fcc.gov/fcc-items-circulation
[5] 68 Fed. Reg. 44144, 44161 (July 25, 2003).

Amended Reply to Opposition to Motion to Lift Stay

The Defendant admittedly used a predictive dialer which has been ruled to be an ATDS by the FCC but argues that the FCC "*impermissibly*" modified the clear and unambiguous language of 47 U.S.C. § 227(a)(1). How interesting that the Defendant apparently does not understand the role of the FCC in making the rules and regulations implementing the TCPA and even supports the Plaintiff's position in its opposition to Plaintiff's Motion to Lift Stay. (Doc18 fn 1). *Impermissibly* modified? Congress delegated the FCC **permission to make and implement the rules and regulations**. How much clearer does that simple fact have to be for the Defendant to understand it? That misguided view is on par with its statement that "some courts *misdetermined* that certain machines called "predictive dialers" that do *not* have the current capacity to 'store or produce phone numbers to be called, using a random or sequential number generator' constitute an ATDS" as stated in its memorandum in support of its motion for stay. (Doc. 9 pg 2) Apparently the Defendant thinks that government agencies such as the FCC as well as the federal district courts are all wrong and "impermissibly" do things or misdetermine things and loanDepot is correct in its assessment of how things should be and therefore it has no liability. Defendant's view of how things should be interpreted by the FCC and the courts is solely to suit its own needs and desire to escape liability after being caught violating the law. It wants to be able to conduct business however it sees fit even if it means harassing people such as Mr. Lee with machinegun style calling to his wireless phone even after he informed loanDepot to stop calling on multiple occasions.

The Defendant also makes note of the ACA International Petition for Rulemaking filed with the FCC which has asked the FCC to clarify that not every predictive dialer constitutes an ATDS. Does that mean that the FCC will rule that no predictive dialers are

an ATDS?  Does it mean that the FCC will *once again* revisit that same issue and change the rules?  One must consider who ACA International is.  They are a trade association for the debt collection industry whose members have a horribly sordid track record of violations of the law including the TCPA. They are not telemarketers like loanDepot. They abuse not only debtors but non-debtors especially through the use of ATDS equipment to place literally millions of calls per day to consumers where a substantial number are made to the WRONG PERSON who does not owe a debt yet is subjected to harassment at the hands of ACA members as a result.  There is obviously, to nobody's surprise, a huge incentive for ACA lobbying for the creation of as big a loophole as possible in the TCPA so their members can continue their sordid behavior in debt collection that is evidenced by huge numbers of lawsuits against their members not to mention literally tens of thousands of complaints to the CFPB.  In the instant case it was an everyday person who was harassed to no end by **loanDepot as a telemarketer** in an effort to sell him a mortgage which he did not ask for or inquire about.  It is a case of a predictive dialer run amok calling him 8 times in a 10 minute span AFTER Mr. Lee had informed loanDepot agents that they had the wrong number and to cease calling his phone.  LoanDepot evidently believes that kind of behavior should and will be condoned by the FCC and hoped for actions on petitions seeking changes to FCC rules regarding non-telemarketing calls regarding the TCPA will allow it.

    Does this court really believe that the FCC, as a result of *petitions before it regarding non-telemarking issues* is going to entirely gut the TCPA to allow telemarketing calls to be made without human intervention to consumers, even after they tell the caller to stop, like Mr. Lee did and do so with impunity?  The remote thought that

the FCC would change rules to condone such behavior by telemarketers such as loanDepot is preposterous yet the Defendant harps on the "we don't dial numbers in random or sequential order" so we didn't violate the TCPA when we called Mr. Lee 8 times in 10 minutes *with our predictive dialer*. That is a frivolous argument at best as they knew, or should have known, what the rules and regulations were for using automated dialing equipment in their telemarketing operations. The TCPA is a strict liability statute and as a telemarketer loanDepot had a duty to know the law surrounding telemarketing and operate within the law and it breached that duty.

The FCC made it incredibly clear in 2003 in its ruling[6] that **predictive dialers are automatic telephone dialing systems** and that the basic function of an ATDS is "the capacity to dial numbers without human intervention." *Id*. It did NOT say that was the case when numbers were dialed in random or sequential order but **when they were dialed without human intervention,** period. The likelihood that the FCC would make wholesale changes to a statute that it put in place in 1992 to stop abuse of consumers and clarified in 2003 and 2012 and allow telemarketing calls with automatic dialers to cell phones stretches the credibility of such notions beyond their elastic limits. There is no reason for this case to be stayed further and Mr. Lee should be able to move his case forward on the merits.

The Defendant cites *Marks v. Crunch San Diego, LLC*. No. 14-348 – F. Supp. 3d --, 2014 WL 5422976, *2 (S.D. Cal. Oct. 23, 2014) as authority for interpretation of the TCPA. The plaintiff in this case has filed a motion for reconsideration and argues among other things that the court could not disregard or invalidate any final order of the FCC because only the Ninth Circuit Court of Appeals has such authority under the

---

[6] 68 Fed. Reg. 44144, 44161 (July 25, 2003)

Amended Reply to Opposition to Motion to Lift Stay

Administrative Orders Review Act more commonly known as the Hobbs Act. See *Mais v. Gulf Coast Collection Bureau, Inc.*, 2014 U.S. App. LEXIS 18554 (11th Cir. Fla. Sept. 29, 2014). Page 32 "under the Hobbs Act, the district court lacks jurisdiction to review the Commission's interpretation." Congress conferred upon the FCC general authority to make rules and regulations necessary to carry out the provisions of the TCPA. Orders "adopted by the Commission in the avowed exercise of its rulemaking power that effect or determine rights generally... have the force of law." *Columbia Board. Sys. v. United States*, 316U. S. 407, 417 (1942). The 2003, 2008, and 2012 FCC rulings are final orders. The Defendant invoked the three (3) above mentioned FCC Rulings but the district court lacks jurisdiction "to enjoin, set aside, or suspend" it— precisely what the court would be doing leaving the stay in place for another six (6) months 47 U.S.C. § 402(a). "To hold otherwise" and permit a challenge of the predictive dialer FCC ruling "merely because the issue has arisen in this private litigation will permit an end-run around the administrative review mandated by the Hobbs act." Nack, 715 F.3d at 686.

      The Defendant's contention that the Courts and the FCC's three rulings are misdetermined, are impermissible, and erroneous interpretations, and have impermissibly modified the statutory definition of an ATDS" is a ludicrous argument on its face. Maybe the salesman for the predictive dialer company came up with that story. Thus any ruling coming from the hordes of petitions before the FCC that hold the Defendant strictly liable could again be argued as "misdetermined, impermissible and erroneous, or impermissibly modified and the disputes could be endless.

      *Gensel v Performant Technologies Inc.* No.13-1196, 2015 WL 402840 *2 (E.D. Wis. Jan. 28, 2015) The facts in *Gensel* are not the least bit analogous to the instant case.

In the above titled case the ACA petition stated as the basis for a stay suggests there should be a safe harbor for autodialed wrong number calls for debt collection calls **not for telemarketing** calls. Unlike in the *Gensel* case where the Plaintiff never answered the calls and let the liability accrue before filing suit, Mr. Lee did answer calls and informed the Defendant in a clear and concise manner that they had in fact called the wrong number and not to call again. After being informed twice by the Plaintiff to stop calling and with full knowledge the Defendant had reached the wrong number it willfully and knowingly continued its machine-gun style calls to the plaintiff's wireless phone from its uploaded, programed and stored magazine of numbers which is precisely the kind of behavior the TCPA was meant to protect consumers from.

In *Gensel* the Defendant asks the court to wait for the Commission to clarify matters in a debt collection context rather than for telemarketing. This clearly being a telemarketing case with the Defendant cleverly omitting the language "not used for telemarketing" in its argument, cites yet another petition with no bearing on the case before this court.

ACA international's petition is not a telemarketing related petition either. It is a trade organization of credit and collection companies. It points out the 2003 and 2008 orders prohibiting use of predictive dialers and again conveniently fails to reference the 2012 declaratory order stating that the "orders have been twisted in litigation and that as a legal matter this is wrong. *"See page 7* ACA *petition* the petition further states "in 2008, the FCC reiterated "that a predictive dialer constitutes an [ATDS] and is subject to the TCPA's restrictions on the use of autodialers." "**ACA does not disagree** with the FCC's

ruling on this point." *See page 6 ACA petition* confirming that a predictive dialer is an ATDS and subject to the restrictions of the FCC's rulings and the intent of Congress.

There could be a never-ending number of petitions before the FCC in regard to the TCPA. If one is withdrawn another Defendant could just replace it with another wanting to allow whatever automatic telephone dialing system or other device is necessary to place calls, fax, text, instant message or any other way to electronically communicate through the use of a telephone, from lists and without any human intervention that they see fit whether it be advertisements, surveys, telemarketing, or debt collection, etc. Evidently Corporations, private businesses, individuals, politicians, and debt collectors should be able to use a machine to dial consumers 24 hours a day seven days a week even after consumers have said NO in order to solicit business in total disregard of the laws and any right to privacy according to the Defendant. Evidently loanDepot believes it should have the ability to invade anyone's privacy at any time with machines to improve their profits in pursuit of the almighty dollar and suffer no consequences.

As a consumer this case is important to Mr. Lee being well over a year since the case was filed and having a stay in place since August 20, 2014 based on three petitions that are not presently being considered by the FCC and very possibly will never be. The Defendant has misdetermined the importance of Mr. Lee's right to privacy and the health and well-being of his family by calling his wireless phone continually rendering it useless to call out if an emergency would have arisen. The stay should be lifted in this case so that it may proceed based on the merits rather than being further delayed under the guise of fairness and at the expense of Mr. Lee.

WHEREFORE, because as shown above it appears from recent public remarks by FCC Commissioner O'Rielly that the TCPA petitions at issue here are not on this year's agenda at the FCC, are not on the Commission Circulation List of petitions being considered and the direct communication to a district court judge from the FCC **that gave no indication that it would resolve the matters raised by the petitions in the near term, if ever,** Mr. Lee respectfully requests that this Honorable Court grant Plaintiffs Motion to Lift Stay and enter an Order to that effect.

Respectfully Submitted,

*Leon Lee*

Leon E. Lee
1314 Dunsworth
Wichita Kansas 67212
316-680-2833
llee71@att.net


### CERTIFICATE OF SERVICE

I certify that an original copy of the Plaintiff's Amended Reply to opposition to lift stay was mailed to the below named party on the date stated below.    By USPS certified mail # 7014 0510 0000 0680 4026

Done this __25__ day of ___May_____, 2015

Joshua C. Dickinson

12925 W. Dodge Rd. Suite 107
Omaha, NE 68154

*Leon Lee*
Leon E. Lee


Amended Reply to Opposition to Motion to Lift Stay