# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

LEON E. LEE,

    *Plaintiff,*

vs.

    Case No. 14-CV-01084-EFM

LOANDEPOT.COM, LLC,

    *Defendant.*

## MEMORANDUM AND ORDER

    *Pro se* Plaintiff Leon Lee brings this suit alleging that Defendant loanDepot.com, LLC, violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. This matter comes before the Court on (1) Plaintiff's Motion to Take Judicial Notice and Supplement the Record (Doc. 48); (2) Plaintiff's Amended Motion for Summary Judgment (Doc. 49); and (3) Defendant's Motion for Summary Judgment (Doc. 53). As set forth more fully below, the Court denies Plaintiff's motions and grants in part and denies in part Defendant's motion.

### I. Facts

    Defendant loanDepot.com, LLC, is a company that offers mortgages. It obtains information regarding potential customers from third parties. Customers who are searching mortgage information online put their telephone number and name into a website and request to

be contacted. The third party then gives the potential customer's information to Defendant, and Defendant contacts him or her.

On March 13, 2013, Defendant received a request from "LeadPoint FHA," one of the third parties it uses to collect information, to contact A.B.[1] at a telephone number ending in 2833. Defendant's call history record lists ten calls on March 13 and 14, 2013, originating from 949-465-8454 to this number. The intended recipient of the calls was A.B., and Defendant believed it had prior express consent to telephone the number ending in 2833. However, instead of calling A.B., Defendant called Plaintiff Leon Lee. Plaintiff has no prior relationship with Defendant and had not previously contacted Defendant at any time for any reason.

The telephone number ending in 2833 is registered to Marilyn Lee, Plaintiff's wife. The number is used by Plaintiff as his cellular phone. Plaintiff has registered the number on the national do-not-call registry. Plaintiff also maintains a land line at his residence.

The last call from Defendant to Plaintiff occurred on March 14, 2013, at approximately 10:40 a.m. During this call, Plaintiff informed Defendant that it had the wrong number and to cease calling him.[2] After making this request, the calls ceased.

Plaintiff sent Defendant a "Notice of Intent to Sue" dated April 8, 2013, advising that he had identified $14,000 in damages for the calls placed on March 13 and 14 and stating that he would bring suit against Defendant if the parties could not settle. On April 18, Defendant responded to Plaintiff and provided him with the call history. Defendant also advised Plaintiff

---

[1] A.B. is a third party who requested mortgage information. A.B.'s identity has been shortened for privacy reasons.

[2] The parties dispute the content and the number of the calls. Plaintiff alleges that ten calls went through and that on the third, fourth, and tenth calls, he advised Defendant that it had the wrong number.

that A.B. mistakenly entered the number ending in 2833 into a request for mortgage information and that Defendant was telephoning A.B. to see if A.B had any interest in a loan transaction.

On February 26, 2014, Plaintiff sent a letter to Defendant demanding a response within ten days "to engage in settlement discussions," and stating "or I will have no choice but to file the attached complaint with the court." Less than one month later, Plaintiff filed suit in this Court alleging that Defendant violated the TCPA and the Kansas Consumer Protection Act ("KCPA"). Plaintiff subsequently dropped his claims under the KCPA. Plaintiff has not claimed any actual damages as a result of Defendant's alleged violations of the TCPA. He does, however, seek statutory damages for Defendant's alleged violations and asks the Court to triple the award amount based on Defendant's alleged knowing and willful violations. Plaintiff has not issued any discovery in this case relevant to Defendant's telephone system. The only discovery that Plaintiff has issued is a Request for Admission containing two requests asking whether Defendant consulted the national do-not-call registry before calling the number ending in 2833 and whether Defendant performed a scrub for the same number before making the calls. Plaintiff also has not examined Defendant's telephone system nor hired an expert to review it.

Plaintiff has filed two motions that are pending before the Court. The first is a Motion to Take Judicial Notice and Supplement the Record. The second motion is Plaintiff's Amended Motion for Summary Judgment. Defendant has also filed a Motion for Summary Judgment. All three motions are ripe for the Court's determination.

## II.     Plaintiff's Motion to Take Judicial Notice and Supplement the Record (Doc. 48)

Plaintiff asks the Court to take judicial notice of three documents and certain facts contained within those documents. The first document is a complaint filed by Plaintiff in another case, which he believes establishes his cellular number as the one ending in 2833. The second

document is an S-1 filing by Defendant with the Securities and Exchange Commission that Plaintiff claims contains knowledge of "autodialers" and "the law regarding telemarketing." The third document is a "Federal Trade Commission Business Blog" that contains questions and answers by an FTC staff attorney.

A court's power to take judicial notice is governed by Fed. R. Evid. 201. Under that rule, a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[3] A court may only take judicial notice of an adjudicative fact and not a legislative fact.[4]

None of the documents Plaintiff asks the Court to look at are subject to judicial notice. First, with regard to the complaint, Plaintiff asks the Court to take judicial notice of this document for the purpose of establishing that his telephone number on January 13, 2012, was the number ending in 2833. Although courts generally take notice of court records, the notice is limited to establishing the existence of a document, not the truth of the facts stated within that document.[5] Here, Plaintiff is asking the Court to take judicial notice to establish the truth of one of the facts stated in the complaint. Thus, the Court will not grant his request to take judicial notice of this document.

Second, as to the S-1 filing, Plaintiff requests that the Court take judicial notice of "the voluntary statements made therein by the Defendant regarding the use of autodialers" and "the acquisition of consent on calls made to consumers." Based on this statement, it appears that

---

[3] Fed. R. Evid. 201(b).

[4] Fed. R. Evid. 201(a).

[5] *Benson v. Bryan*, 2014 WL 6609375, at *1 n.1 (D. Kan. Nov. 20, 2014) (citations omitted).

Plaintiff asks the Court to take judicial notice of the fact that Defendant used an "automatic telephone dialing system" as defined under the TCPA. The determination of whether Defendant's telephone system qualifies as an "automatic telephone dialing system" is an issue to be decided by the Court on summary judgment.[6] Therefore, the Court declines to take judicial notice of the facts set forth in the S-1 filing.

Finally, Plaintiff asks the Court to take judicial notice as to the FTC Business Blog. Plaintiff does not specifically state which facts from the blog that he would like the Court to take notice of, although he generally refers to the "answers to telemarketing questions" in his motion. These are not facts that can be "accurately and readily determined."[7] Therefore, the Court will not take judicial notice of the contents of the FTC Business Blog.

The Court cannot take judicial notice of the documents and facts set forth in Plaintiff's motion because they do not satisfy Fed. R. of Evid. 201. Plaintiff may, however, still use these documents, if properly authenticated, in support of his motion for summary judgment or in response to Defendant's motion for summary judgment. Plaintiff's Motion to Take Judicial Notice and Supplement the Record is therefore denied.

### III. The Parties' Cross-Motions for Summary Judgment (Docs. 49 and 53)

**A. Legal Standard**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[8]

---

[6] *See* Fed. R. Evid. 201(b) (stating that the Court may only take judicial notice of a fact that is not reasonably in dispute).

[7] *Id.*

[8] Fed. R. Civ. P. 56(a).

A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[9] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[10] If the movant carries its initial burden, the nonmovant may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[11] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[12] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[13]

Though the parties in this case filed cross-motions for summary judgment, the legal standard remains the same.[14] Each party retains the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law.[15] Each motion will be considered separately.[16] To the extent the cross-motions overlap, however, the court may

---

[9] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[10] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 325 (1986)).

[11] *Id.* (citing Fed. R. Civ. P. 56(e)).

[12] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).

[13] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[14] *City of Shawnee v. Argonaut Ins. Co.*, 546 F. Supp. 2d 1163, 1172 (D. Kan. 2008).

[15] *United Wats, Inc. v. Cincinnati Ins. Co.*, 971 F. Supp. 1375, 1382 (D. Kan. 1997) (citing *Houghton v. Foremost Fin. Servs. Corp.*, 724 F.2d 112, 114 (10th Cir. 1983)).

[16] *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

address the legal arguments together.[17]  Finally, although Plaintiff is *pro se*, and the Court must afford him some leniency in his filings, he is still expected to "follow the same rules of procedure that govern other litigants."[18]

**B.     Analysis**

Plaintiff brings two counts under the TCPA.  In the first count, he alleges that Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii), which prohibits calls to certain telephone numbers using an "automatic telephone dialing system" ("ATDS") or "an artificial or prerecorded voice" except in an emergency or with the recipient's express prior consent.  In the second count, Plaintiff alleges that Defendant violated 47 U.S.C. § 227(c)(5), which provides that any person who has "received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed" under that section may bring suit.  Plaintiff's claim relates to the Federal Communication Commission's ("FCC's") regulation prohibiting telephone solicitations to numbers on the national do-not-call registry.[19]  Both parties move for summary judgment on these claims, and the Court will address each below.

**1.     Plaintiff's ATDS Claim**

The purpose of the TCPA is to "curb abusive telemarketing practices that threaten the privacy of consumers and businesses."[20]  The statute provides:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

---

[17] *Berges v. Standard Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010).

[18] *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

[19] *See* 47 C.F.R. § 64.1200(c)(2).

[20] *Nieto v. Allied Interstate, Inc.*, 2014 WL 4980376, at *2 (D. Md. Oct. 3, 2014) (quoting *Lynn v. Monarch Recovery Mgmt., Inc.*, 2013 WL 1247815, at *3 (D. Md. Mar. 25, 2013)).

> (A) to make any call (other than a call made for emergency purposes or *made with the prior express consent of the called party*) *using any automatic telephone dialing system* or an artificial or prerecorded voice—
>
> (iii) *to any telephone number assigned to a . . . cellular telephone service . . .* or any other service for which the called party is charged for the call.[21]

The TCPA authorizes a private right of action for violations of the statute, and an individual may recover for actual monetary loss or receive $500 in damages for each violation.[22]

Defendant argues that it is entitled to summary judgment on this claim because Plaintiff lacks standing to assert a claim under the TCPA and because Plaintiff cannot establish that Defendant used an ATDS to call him. Plaintiff, in turn, argues that he is entitled to summary judgment because Defendant did not have express consent to call his wireless phone and because Defendant used an ATDS to make ten calls to him.

### a. Standing

Defendant contends that Plaintiff does not have standing to bring a claim under the TCPA because he is not the subscriber of the telephone number ending in 2833—Plaintiff's wife is— and because Defendant intended to call A.B. Defendant argues that the references to "called party" in § 227(b) are to the *intended* recipient of the calls, and not merely the *actual* recipient of the calls. In support of this argument, Defendant relies on a line of cases that hold that only the called party, i.e., the intended recipient, has statutory standing to bring suit under the TCPA.[23]

---

[21] 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

[22] 47 U.S.C. § 227(b)(3).

[23] *See Sacchis v. Care One, LLC*, 2015 WL 3966034, at *6 (D.N.J. June 30, 2015) (finding that the intended recipient had standing to bring a claim under the TCPA); *Cellco P'ship v. Wilcrest Health Care Mgmt.*, 2012 WL 1638056, at *7 (D.N.J. May 8, 2012);.

Neither the Tenth Circuit nor the courts in this District have considered who has standing to sue for a violation of § 227(b)(1)(A)(iii).  However, in 2015, the FCC issued a "Declaratory Ruling and Order" that "resolved 21 separate requests for clarification or other action regarding the TCPA."[24]  One of the issues discussed in the 2015 FCC Order is the meaning of the term "called party" and whether the term refers to the intended recipient of the call or the current subscriber of the wireless phone.[25]

As an initial matter, this Court must decide whether it will apply the 2015 FCC Order when determining Defendant's liability under the TCPA.  Under the Hobbs Act, 28 U.S.C. § 2342(1), the Federal Courts of Appeal have exclusive jurisdiction over final orders issued by the FCC.[26]  Approximately ten petitions have been filed in several federal appellate courts regarding the 2015 FCC Order.  Those petitions have been consolidated before the District of Columbia Circuit Court of Appeals, but no decision has been issued.[27]  Because Congress has entrusted the interpretation of the TCPA to the FCC,[28] this Court finds that the FCC's 2015 Order has full legal authority.

Moving on to the legal issue at hand, the 2015 FCC Order defines the term "called party" as the "subscriber, *i.e.*, the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business

---

[24] *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7964 (2015) [hereafter "2015 FCC Order"].

[25] *Id.* at 8000-01.

[26] *Council Tree Inv'rs, Inc. v. F.C.C.*, 739 F.3d 544, 551 (10th Cir. 2014) (citing *Minority Television Project, Inc. v. F.C.C.*, 736 F.3d 1192, 1211 (9th Cir. 2013) (en banc)).

[27] *See ACA Int'l v. F.C.C.*, No. 15-1211 (D.C. Cir.).

[28] *Higginbotham v. Hollins*, 2014 WL 2865730, at *2 (D. Kan. June 24, 2014) (citation omitted).

calling plan."[29] The TCPA based this finding on the language of § 227(b), which states that the TCPA's restriction applies to "any service for which the called party is charged for the call."[30] According to the FCC, the term "is best understood to mean the subscriber to whom the dialed wireless number is assigned because the subscriber is 'charged for the call' and, along with a non-subscriber customary user, is the person whose privacy is interrupted by unwanted calls."[31] In addition, the FCC specifically rejected any proposals to interpret the term "called party" to be the "intended recipient" or "intended called party."[32]

Based on the FCC's ruling in the 2015 Order, this Court finds that Plaintiff has standing to bring his claims under the TCPA. Although Plaintiff is not the subscriber, he is the husband of the subscriber and the primary user of the wireless number ending in 2833. Therefore, the Court denies Defendant's motion for summary judgment on this basis.

### b. Use of an ATDS

To prevail on his claim under § 227(b)(1)(A)(iii), Plaintiff must establish that Defendant used an ATDS to call his cellular phone. The TCPA defines the term "ATDS" as "equipment which has the capacity-- (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."[33] The FCC has provided further information concerning what constitutes an ATDS. In 2003, the FCC ruled that so-called

---

[29] 2015 FCC Order, 30 FCC Rcd. at 8000-01.

[30] *Id*. (citing 47 U.S.C. § 27(b)(1)(A)(iii)).

[31] *Id*.

[32] *Id*. at 8002.

[33] 47 U.S.C. § 227(a)(1).

"predictive dialers" fall "within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of congress."[34] The FCC explained that a predictive dialer is:

> equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers.[35]

The FCC has further stated that "this definition covers any equipment has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers are called randomly or sequentially generated or come from calling lists."[36]

Defendant argues that it is entitled to summary judgment because Plaintiff cannot establish that the telephone equipment that Defendant used to call him constitutes an ATDS. In response, Plaintiff argues that an affidavit submitted by Saeed Ghasemzadeh, Defendant's Director of the Contact Center Operations, in support of a prior filed motion establishes the requisite elements of an ATDS. In that declaration, Ghasemzadeh states that

> the dialing system used by loanDepot to call the number allegedly owned by the Plaintiff is a "predictive dialer" in that the dialing system is premised off leads obtained from online applications and then those leads are uploaded into loanDepot's system and then predictively dialed. It only dials numbers that are programmed into it from loanDepot's database; it does not randomly dial numbers.

---

[34] *In Re Rules & Regulations Implementing the Tel. Consumer Prot.Act of 1991*, 18 FCC Rcd. 14014, 14091 (2003) [hereafter "2003 FCC Order"]. Defendant argues that the Court should reject the FCC's Orders stating that predictive dialers constitute an ATDS based on a 2014 district court opinion from the Southern District of California. The Court does not find this argument persuasive. As previously explained, under the Hobbs Act, only federal Courts of Appeal have exclusive jurisdiction over final orders issued by the FCC. *See Council Tree Inv'rs*, 739 F.3d at 551; *see also Mais v. Gulf Coast Collection Bureau*, 768 F.3d 1110, 1119 (11th Cir. 2014). Therefore, the Court will treat the FCC Orders regarding the TCPA as full legal authority.

[35] *Id*. In the 2015 FCC Order, the FCC further explained that the TCPA's definition of capacity "does not exempt equipment that lacks the 'present ability' to dial randomly or sequentially' and "any equipment that has the requisite 'capacity' is an autodialer . . . subject to the TCPA." 2015 FCC Order, 30 FCC Rcd. at 7974.

[36] *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 15391, 15392 n.5. (2012) (citation omitted).

Standing alone, this testimony is not sufficient for the Court to find that Defendant used an ATDS to call Plaintiff. It does not address whether Defendant's system contains hardware that is paired with certain software and has the capacity to store or produce numbers. However, it does state that Defendant uses a "predictive dialer" and that the system dials numbers that are programmed into it from a database. This is a major component of the definition prescribed by the FCC. Thus, this testimony is sufficient to create a genuine issue of fact in response to Defendant's motion. Therefore, the Court denies both Plaintiff and Defendant's motions for summary judgment on this issue.

### 2.  Plaintiff's Do-Not-Call Registry Claim

Plaintiff alleges that Defendant violated 47 U.S.C. § 227(c)(5) by calling him in violation of the national do-not-call registry. Section 227(c)(5) provides that any person who has "received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this section" may bring suit.[37] The regulation at issue states that no person or entity shall make any telephone solicitation to "[a] residential telephone subscriber who has registered his or her number on the national do-not-call registry of persons who do not wish to receive telephone solicitations . . . ."[38]

Defendant argues that it is entitled to summary judgment because Plaintiff has not established that he is a "residential telephone subscriber." In support of this argument, Defendant points out that Plaintiff and his wife have a landline at their residence. Plaintiff does

---

[37] 47 U.S.C. § 227(c)(5). Defendant continually refers and cites to 47 U.S.C. § 227(b)(5) in its motion, while the correct citation is actually to § 227(c)(5). The Court assumes that Defendant meant to cited § 227(c)(5) throughout its motion.

[38] 47 C.F.R. § 64.1200(c)(2).

not offer any evidence to dispute these facts in response to Defendant's motion. Instead, he cites to an FCC Consumer Help Page stating that cellular telephone numbers may be registered on the do-not-call registry.

The Court is not persuaded that Plaintiff has met his burden at summary judgment to overcome Defendant's motion. To prevail under 47 C.F.R. § 64.1200(c)(2), Plaintiff must establish that his cellular number is used for residential purposes.[39] The FCC addressed this issue in its 2003 Order regarding the statute. In that Order, the FCC stated that it would presume that wireless numbers registered on the national do-not-call registry were residential numbers.[40] It also stated, however, that in the case of an enforcement action, the complainant had the burden to prove that the wireless number was used as a residential number.[41] In *United States v. Dish Network*, the court relied upon these statements by the FCC in holding that, to prevail under 47 C.F.R. § 64.1200(c)(2), the plaintiff must show that the calls were directed to a residential telephone subscriber.[42]

In this case, Plaintiff has not come forward with any evidence showing how he used his cellular phone. The only evidence Plaintiff offers in his affidavit is that he is the husband or the subscriber, that he is the primary user of the phone, and that he pays the bill for the phone. Therefore, Plaintiff has failed to present sufficient facts showing a genuine issue for trial, and the

---

[39] *United States v. Dish Network, LLC*, 75 F. Supp. 3d 942, 1024 (C.D. Ill. 2014), *vacated in part on other grounds*, *United States v. Dish Network, LLC*, 80 F. Supp. 3d 917, 920 (C.D. Ill. 2015).

[40] 2003 FCC Order, 18 F.C.C. Rcd. at 14039.

[41] *Id.*

[42] 75 F. Supp. 3d at 1024.

Court grants summary judgment to Defendant on this claim.[43] Conversely, the Court denies summary judgment to Plaintiff.

### 3. Defendant's Good Faith Belief Argument

In the alternative, Defendant argues that it is entitled to summary judgment on both of Plaintiff's TCPA claims because it had a good faith belief that it had consent to call Plaintiff. In support of this argument, Defendant relies on an unpublished opinion from the Eastern District of North Carolina. In *Danehy v. Time Warner Cable Enterprises*,[44] the plaintiff requested the defendant perform a service at his home and provided the defendant with two telephone numbers at which he could be reached.[45] In response to the request, the defendant called the plaintiff's secondary number, but unknown to defendant, that number was no longer registered to the customer.[46] Instead, the number was a cellular number that belonged to the plaintiff.[47] The plaintiff had placed that number on the national do-not-call registry and did not consent to the calls from the defendant.[48] The plaintiff subsequently brought claims under §§ 227(b) and 227(c) of the TCPA, and the court found that the defendant was not liable because it acted in good faith based on the information provided to it.[49]

---

[43] Defendant also argues that Plaintiff lacks standing to sue under § 227(c)(5) of the TCPA because he is not the actual subscriber for the cellular number ending in 2833. The Court need not address this issue with regard to Plaintiff's claim under 47 U.S.C. § 227(c)(5) because it has found that Plaintiff has not met his burden to show that he uses the number for residential purposes.

[44] 2015 WL 5534094 (E.D.N.C. Aug. 6, 2015).

[45] *Id*. at *1.

[46] *Id*.

[47] *Id*.

[48] *Id*.

[49] *Id*. at **5-7.

Defendant asks the Court to apply the same reasoning here.  It contends that it should not be liable under the TCPA because it had a good faith belief it was calling the number ending in 2833 based on A.B.'s request.  Defendant's argument seems to mirror the "intended recipient v. actual called party" argument that it made when it argued that Plaintiff did not have standing to file suit under the TCPA.  But, in that situation, the FCC determined that the term "called party" means the actual subscriber of the phone or the non-subscriber customary user—not the intended recipient.[50]  Defendant's argument is also similar to another issue described in the 2015 FCC Order—the reassignment of wireless telephone numbers.[51]  In that situation, the FCC found that a caller who calls a number that was reassigned from the customer who gave consent for the call was liable under the TCPA.[52]  The FCC recognized that there could be "good faith errors," such as incorrect entry of phone numbers into databases, but stated that TCPA requires the consent of the current subscriber or non-subscriber customary user of the phone and not the intended recipient of the call.[53]

Given the FCC's explicit determination that a caller must have the consent of the subscriber or non-subscriber customary user of the phone to be found not liable under the TCPA, the Court declines to apply a good faith defense in this case.  Furthermore, even if the Court did apply such a defense, Plaintiff has come forward with sufficient evidence to establish a genuine issue of fact for trial.  Plaintiff's declaration states that he advised Defendant on the third, fourth, and tenth calls that it had the wrong number.  Thus, after receiving this information, Defendant

---

[50] 2015 FCC Order, 30 FCC Rcd. at 8000.

[51] *Id*. at 7999.

[52] *Id*. at 7999-8000.

[53] *Id*.

arguably knew that it was calling Plaintiff, and not A.B., and therefore no longer had a good faith belief that it had consent to call.[54] Defendant claims that Plaintiff's affidavit is inadmissible because Plaintiff allegedly did not produce the document he created detailing the calls. Plaintiff explained in his deposition, however, that this document was later added to and became part of his original Complaint. Therefore, the Court declines to find the affidavit inadmissible on this basis. Plaintiff has submitted sufficient evidence creating an issue of fact regarding whether Defendant reasonably believed it had consent to call the number ending in 2833. Therefore, the Court declines to grant summary judgment to Defendant on this basis.

### 4. Willful and Knowing Violations

The TCPA allows a plaintiff to recover $500 in damages for a violation of the statute without regard to the defendant's state of mind in committing the alleged violation.[55] This award of damages is not discretionary.[56] In addition, the TCPA allows the court to increase the award up to three times the statutory amount "[i]f the court finds that the defendant willfully or knowingly violated" the TCPA.[57]

The Tenth Circuit has not determined what constitutes a knowing or willful violation of the TCPA, and courts are divided on the issue. Some courts have held that a defendant must have known that its actions violated the TCPA, while other courts have held such knowledge is

---

[54] The 2015 FCC Order states that a called party may revoke consent at any time and through any reasonable means. *Id*. at 7989-90.

[55] 47 U.S.C. §§ 227(b)(3)(B), 227(c)(5)(B).

[56] *See Adamcik v. Credit Control Servs., Inc*., 832 F. Supp. 2d 744, 754 (W.D.Tex. Dec. 19, 2011) (stating that the only discretion Congress afforded the court is whether to increase the amount of damages).

[57] 47 U.SC. §§ 227(b)(3), 227(c)(5).

unnecessary.[58]  The latter courts have found that the defendant's action need only be intentional.[59]  These courts have relied on language from the Communications Act of 1943, of which the TCPA is a part of, and its definition of "willful" as "the conscious or deliberate commission or omission of such an act, irrespective of any intent to violate any provision[], rule or regulation."[60]  The FCC itself has found that knowledge of the alleged violation is not required.  According to the FCC, "[w]illful . . . means that the violator knew that he was doing the act in question. . . . A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance."[61]

This Court chooses to follow the direction of the FCC and those courts who have found that the plaintiff need not prove that the defendant had knowledge of the TCPA's provisions to establish a knowing or willful violation.  Rather, the Court finds that "to establish a *knowing* violation of the TCPA for an award of treble damages, a plaintiff must prove only that the defendant knew that it acted or failed to act in a manner that violated the statute, not that the defendant knew that the conduct itself constituted a violation of the law."[62]

Plaintiff seeks statutory damages in the amount of $30,000.  He asks the Court to triple the $500 statutory damage award for each of the ten calls and for both of his claims.  Plaintiff argues that Defendant's conduct was knowing and willful, and thus, he is entitled to an increased award amount.  Because the Court has not granted summary judgment in Plaintiff's favor on

---

[58] *See In re Monitronics Intern., Inc*., 2014 WL 316476, at *5 (N.D.W.V. Jan. 28, 2014) (collecting cases).

[59] *Sengenberger v. Credit Control Servs., Inc.*, 2010 WL 1791270, at *6 (N.D.Ill. May 5, 2010).

[60] *Id*. (citing 47 U.S.C. § 312(f)).

[61] *In re Dynasty Mortg., LLC*, 22 F.C.C. Rcd. 9453, 9470 n.86 (May 14, 2007).

[62] *Stewart v. Regent Asset Mgmt. Solns*., 2011 WL 1766018, at *7 (N.D.Ga. May 4, 2011) (internal quotation marks and citation omitted).

either of his claims, it declines to address Plaintiff's arguments as to why summary judgment should be granted in his favor on this basis as well.

Defendant also seeks summary judgment on this issue, arguing that Plaintiff cannot establish that its conduct was willful or knowing. Defendant's argument is primarily based on its assertion that a court must find that the defendant knew it was violating the TCPA for the defendant's conduct to be knowing or willful. The Court has declined to apply that standard here. Nevertheless, Defendant is still entitled to partial summary judgment on this issue.

Plaintiff has submitted an affidavit stating that he informed Defendant on the third and fourth calls that it had the wrong number. Although Defendant disputes this, the fact that Defendant continued to call Plaintiff after being informed he was not A.B. creates a genuine issue of fact for trial regarding whether Defendant's alleged violation of § 227(b)(1)(A)(iii) was knowing and willful. Plaintiff, however, has not come forward with any evidence showing that Defendant's conduct was knowing or willful with regard to the first three calls. Although Plaintiff claims that Defendant left a voice mail message on the first calls, and that his voice mail identified him as the owner of the phone, this does not necessarily mean that A.B. was not available at that number. Therefore, the Court grants Defendant's motion with regard to calls one through three on Plaintiff's claim that he is entitled to treble damages under § 227(b)(3) and denies Defendant's motion with regard to Plaintiff's claim that he is entitled to treble damages under § 227(b)(3) with regard to calls four through ten. The Court need not consider whether Plaintiff is entitled to treble damages under § 227(c)(5) because it has already granted summary judgment to Defendant on this claim.

### 5. Conclusion

In sum, the Court denies Plaintiff's Amended Motion for Summary Judgment and grants in part and denies in part Defendant's Motion for Summary Judgment. With regard to Plaintiff's claim under 47 U.S.C. § 227(b)(1)(A)(iii), the Court finds that Plaintiff has come forward with sufficient evidence to show a genuine issue of fact regarding whether Defendant used an ATDS to call Plaintiff. Therefore, Defendant's motion is denied as to this claim. With regard to Plaintiff's claim under 47 U.S.C. § 227(c)(5), the Court finds that Plaintiff has not met his burden to show that he was a residential subscriber. Therefore, the Court grants Defendant's motion with regard to this claim. With regard to Plaintiff's request for treble damages, the Court grants Defendant's motion as to his claim under § 227(c)(5). The Court grants in part and denies in part Defendant's motion as to Plaintiff's claim under § 227(b)(1)(A)(iii). Plaintiff may seek treble damages as to calls four through ten. He may not seek treble damages as to calls one through three.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Take Judicial Notice and Supplement the Record (Doc. 48) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Amended Motion for Summary Judgment (Doc. 49) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 53) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED**.

Dated this 17th day of August, 2016.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE